Argued November 18, 1959, affirmed March 2, 1960

# OREGON PHYSICIANS' SERVICE *v.* STATE TAX COMMISSION

349 P. 2d 831

*Charles P. Duffy,* Portland, argued the cause for appellant. Carl E. Davidson, Portland, was with him on the brief.

*T. W. de Looze,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Robert Y. Thornton, Attorney General of Oregon, Donald J. Griswold and Carlisle B. Roberts, Assistant Attorneys General, Salem.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan and King, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff, Oregon Physicians' Service, from a decree which the circuit court entered in favor of the defendants after it had sustained their demurrer to a petition for review filed by the plaintiff pursuant to ORS 306.545. The demurrer challenged the petition upon the ground that it did not state a cause of suit. The plaintiff is an organization which was incorporated under the Oregon non-profit statute, ORS chapter 61. The defendants are the three members of the Oregon Tax Commission. ORS 306.010. The petition sought an order vacating and setting aside the assessment of a corporation excise tax (ORS chapter 317) imposed upon the plaintiff by the defendants after a hearing. The plaintiff contends that it is exempt from the corporation excise tax. Following the imposition of the tax the plaintiff filed in the circuit court the aforementioned petition. The defendants then presented the demurrer which we have also mentioned; and after the court had sustained it the plaintiff appealed. The plaintiff attached to and made a part of its petition the opinion of the commission adverse to the plaintiff and also the findings of fact entered by the commission. It makes no contention that the findings of fact do not correctly state the facts which govern this case, nor does it contend that a trial is necessary to bring forth some fact or other essential to a correct decision of this case. The plaintiff argues that the commission misapplied the facts and argues matters of law.

Based upon ORS 317.080 (6) the plaintiff claims

that it is exempt from the excise tax. The section of our laws just cited reads as follows:

"The following corporations are exempt from the taxes imposed by this chapter:

\*　　\*　　\*

"(6) Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employes, the membership of which is limited to the employes of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes, and no part of the net earnings of which inures to the benefit of any private stockholder or individual."

The plaintiff argues that it is a "civic league or organization" within the purview of that section.

The plaintiff was incorporated on December 6, 1941, apparently as the medical profession's response to the growing popularity of prepaid medical service. As early as 1936 there were five privately operated insurance companies in Oregon which employed physicians on a "contract" basis to supply medical services to their members. Some large business concerns also employed physicians on a contract basis to furnish medical service to their employees. The medical profession opposed the contract practice on both monetary and ethical grounds and for a few years waged a vigorous but unsuccessful campaign against it. Finally, in 1941, the profession changed its tack and established its own insurance plan, Oregon Physicians' Service. Amended and supplemental articles of incorporation and by-laws were adopted March 7, 1953, in order to permit the plaintiff to reorganize under the Oregon non-profit statute. At the time of the Tax Commission

hearing the membership of the Oregon Physicians' Service was approximately 1,300 physicians and 130,000 laymen. The facts which we just mentioned were taken from the record in this case and from *United States v. Oregon State Medical Society,* 343 US 326, 72 S Ct 690, 92 L Ed 978. That decision affirmed 95 Fed Supp 103. The facts taken from that case are set forth as background information, but for no other purpose.

The plaintiff's corporate excise tax return for the fiscal year beginning July 1, 1953, and ending June 30, 1954, showed a net income of $51,875.18 on which no taxes were computed or paid. September 13, 1955, a hearing was held before the Tax Commission to settle the exemption claim made by the plaintiff. January 30, 1957, the commission entered findings of fact and conclusions of law which denied the claim of exemption and ordered that all arrears of taxes be paid. The decision of the commission was a two-to-one vote.

If the demurrer filed in the circuit court is to be sustained on appeal, it must be because the facts alleged by the plaintiff in its petition for review in themselves affirmatively defeat the claimed exemption. The allegations of the petition show that Oregon Physicians' Service was organized with a view to avoid the excise tax, if possible. That objective was entirely lawful and in mentioning it we imply no censure or disapproval.

Membership in the plaintiff is divided into three classes designated as Class A, Class B and Class C. Class A membership is limited to participating physicians who pay annual fees of $25 or $50, depending upon the population of the city in which the physician practices. Class B membership is composed of "civic

minded persons who are willing to serve in carrying out its purposes without remuneration." Who those persons are and what responsibilities they assume does not appear from the record before us. Class C members are insured lay beneficiaries who pay monthly regular dues in order to obtain the medical benefits called for in their individual or group contracts with the plaintiff. The plaintiff has contracts with its participating physicians (Class A members) for services to the Class C members. It also has contracts with cooperating hospitals.

The petition alleges that most of the plaintiff's income is derived from the dues paid by Class C members. The funds so obtained are "expended in defraying the cost of medical, surgical, hospital, nursing, ambulance, dental, first aid and other related services for the 'Class C' members and for administration expenses." The fees paid to participating physicians are determined by a fee schedule. It is important to note that while the plaintiff may pay its physicians less than the prescribed fee, it may not pay more.

Net income of the plaintiff above all expenses and reserve requirements may be distributed, in the discretion of a board of trustees, in one of several ways described in the petition. Such income may be "retained as a reserve fund, distributed to participating physicians who have received less than the full fees scheduled in any prior accounting period, or used to increase the benefits or decrease the costs to Class C members."

The plaintiff's articles of incorporation provide that in the event of liquidation, dissolution, or winding up its net assets are to be distributed to the Oregon

State Medical Society or a successor for use exclusively in "medical research, medical education or the development and establishment of nonprofit medical care plans and for the promotion of social welfare."

■ In determining whether or not the circuit court was correct in dismissing the complaint we start with the well settled rule that tax exemption statutes are strictly construed against the individual who claims their benefit. *The Methodist Book Concern v. State Tax Commission*, (1949) 186 Or 585, 208 P2d 319; *Helvering v. Ohio Leather Co.*, (1942) 317 US 102, 63 S Ct 103, 87 L Ed 113; *New Colonial Ice Co. v. Helvering*, (1934) 292 US 435, 54 S Ct 788, 78 L Ed 1348. The reason underlying this rule of construction goes deeper than mere protection of the public fisc. Not uncommonly, charitable and other non-profit associations compete actively with private business. To the extent that a charitable corporation is relieved of the tax burden it gains a competitive advantage. To the extent that such tax relief is not based on reasonable classification for sound public ends it is a denial of equal protection of the laws. Strict construction of exemption statutes thus with us has constitutional overtones. *Behnke-Walker Business College v. Multnomah County*, (1944) 173 Or 510, 146 P2d 614; *Corporation of the Sisters of Mercy v. Lane County*, (1927) 123 Or 144, 261 P 694. See *Industrial Addition Association v. Commissioner*, (1942) 1 TC 378, 384.

■ ORS 317.080 (6) was drawn verbatim from the federal Internal Revenue Code of 1924, sec 231 (8), 43 Stat 282, which became sec 101 (8) of the Internal Revenue Code of 1939, and is now sec 501 (c)(4) of the 1954 code. However, the Oregon statute concludes with a clause which is not in the federal act:

"* * * and no part of the net earnings of

which inures to the benefit of any private stock-holder or individual."

The state contends that this final clause modifies "civic leagues or organizations" and hence, it argues that the clause makes the test for exemption extremely restrictive. We are convinced that all of the modifying language of ORS 317.080 (6) which follows the phrase "local associations of employes" refers only to such associations and has no bearing on what goes before. The genesis of the present act was in Oregon Laws 1929 ch 427, sec 11, which exempted only "civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare." The remainder of the present section, beginning with the disjunctive "or" was added in its present form by Oregon Laws 1939 ch 489, sec 5. The history of the Oregon statute closely parallels that of the federal act. The exemption for civic leagues and organizations appears in the first federal income tax law of 1913, sec II G(a), ch 16, 38 Stat 172, while the exemption for local associations of employees was added in 1924. Section 231 (8), 43 Stat 282. In *Hanover Imp. Soc., Inc. v. Gagne,* (1st cir 1937) 92 F2d 888, the court of appeals for the first circuit rejected an argument made by the government that the final clause of the federal act, "the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes," referred to "civic leagues or organizations" as well as to "local associations of employees." That opinion probably received the attention of the Oregon legislators who drafted the present law in 1939. Even if this was not the case, the decision in *Hanover Imp. Soc., Inc. v. Gagne* is clearly correct both from the standpoint of legislative history and elementary gram-

mar. The pronoun "which" in the clause beginning "the membership of which" can refer only to "local associations of employes" and the parallel use of "which" in the succeeding two modifying clauses indicates a common referent.

Moreover, we agree with the view expressed in plaintiff's reply brief to the effect that, by definition:

"* * * an organization operated *exclusively* for the promotion of social welfare could not have any part of its net earnings inuring to the benefit of any private stockholder or individual."

The correct statutory construction is, in this view of the case, unimportant.

■ The State Tax Commission properly ruled that in order to qualify for exemption under ORS 317.080 (6) an organization must meet three requirements:

"(a) It must be organized as a civic league or organization;

"(b) It must not be organized for profit, and

"(c) It must be operated exclusively for the promotion of social welfare."

The Commission held that plaintiff failed to meet the first and third of these requirements, stating:

"The facts of this case support the conclusion that OPS was neither 'organized as a civic league or organization' nor was it 'operated exclusively for the promotion of social welfare.'"

There is nothing in the manner in which the Oregon Physicians' Service was organized or in the scope of its activities which prevents its recognition as a "civic league or organization" within ORS 317.080 (6). However, our understanding of the commission's ruling that plaintiff was not "organized as a civic league or

organization" is simply that it was not organized for the public purposes inherent in the idea of "civic league" and with this conclusion we agree.

The crux of the problem before this court is whether the plaintiff is an association "not organized for profit but operated exclusively for the promotion of social welfare." The Tax Commission recognized a division among the precedents interpreting the federal act, but in our opinion those favorable to the plaintiff can be distinguished from the case at bar upon an entirely practical basis.

Among the decisions lending support to plaintiff's position is *United States v. Pickwick Electric Membership Corporation,* (6th Cir 1946) 158 F2d 272. Pickwick Corporation was organized under the laws of Tennessee as a "cooperative, general welfare, non profit corporation" for the purpose of supplying electric power to communities in three rural counties. Some communities had previously been without electricity. To finance its operations, Pickwick borrowed large amounts of money from the Rural Electrification Administration and Tennessee Valley Authority. Management was in the hands of a board of trustees. Individual consumers became members of the cooperative by payment of a five dollar fee and membership was open to all on a non-discriminatory basis. The company also served non-members, but they were charged higher rates than members. The by-laws of the company required net profits to be distributed as "(1) patronage refunds, or (2) by way of general rate reductions, or (3) by combination of such methods." In addition, a contract with Tennessee Valley Authority required that surplus revenues be used to reduce rates. The court of appeals ruled that Pickwick was

not "organized for profit." It reasoned that refunds and rate reductions fell outside "the usually accepted meaning of profit motive" and were "so closely related to a readjustment of rates that it was not an actual profit in the real meaning of the word over the longer period of time." Refunds and rate reductions were also held to be consistent with an operation "exclusively for the promotion of social welfare" on the theory that these were closer in nature to reductions in the cost of living than to dividends on investment. "Such a benefit is the result of the successful promotion of social welfare by the company." That non-members could freely join the cooperative on equal terms was a fact strongly emphasized.

*Scofield v. Rio Farms,* (5th Cir 1953) 205 F2d 68, and *Garden Homes Co. v. Commissioner,* (7th Cir 1933) 64 F2d 593, also are favorable to the plaintiff. *Scofield v. Rio Farms* granted the tax exemption claim of a large cooperative farming enterprise. The corporation, organized under Texas law at the instigation and with the sponsorship of the United States Department of Agriculture and Farm Security Administration, purchased 26,000 acres of land which Farm Security Administration had held under option in two Texas counties. The federal agency just mentioned had full control of the policies of the cooperative. Much of the land was leased to low-income farmers for periods of up to five years, during which time the farmers were trained in improved farming practices. At the end of the term the cooperative assisted the tenants to relocate. Other parcels of land, not suitable for this method of operation, were leased to middle income farmers on a permanent basis. Still others were sold outright. However, the whole estate was managed on a cooperative basis as a result of which

the participating farmers received many indirect economic benefits. No net profits were ever distributed to the cooperative members. The charter required these to be used "to meet the social problems and assist low-income farm families and individuals within certain areas within the state of Texas, assisting said families and individuals in obtaining agricultural benefits, marketing and otherwise, and in improving their economic condition." It appears to have been the government's purpose in sponsoring this organization to raise farming standards in a depressed area. The court noted the anomaly of granting an exemption to "an operation, as a result of which particular individuals, who are neither paupers nor otherwise objects of charity, receive great benefits," but stated that it would follow a "liberal, rather than a cheese paring, construction in considering and determining such claims for exemption."

*Garden Homes Co. v. Commissioner* involved the exemption claim of a housing corporation which was organized under a Wisconsin statute designed to relieve an acute shortage of homes in Milwaukee. It was characterized by the court as a "laudable enterprise for furnishing at cost much needed homes for working men." Financing was accomplished in part through the issue of preferred and common stock. Preferred stock bore dividends not to exceed 5 per cent per year. The statute required that 10 per cent of any annual net profit of the corporation must be used to retire the preferred stock. Much of this stock was purchased by the city and county of Milwaukee. Common stock was issued only to tenants of the corporation's housing. The face value was to be paid for out of a portion of the monthly rental, and when paid for the home became the property of the tenant. The common stock

was entitled to receive dividends out of profits. Directors of the corporation were to receive no compensation unless all expenses of the corporation including dividends of the preferred were first met, and the company paid only about $3000 a year in salaries to other employees. This arrangement was held to be tax exempt as a "civic organization." Dividend payments on the preferred were characterized as interest on bonded indebtedness.

The practical distinction between these cases and the one before us is to be found in the fact that in all of them there was a much stronger showing of public necessity than is discoverable here. Pickwick Electric Membership Corporation was a public utility created to serve a rural area; Rio Farms was part of a government program to improve agriculture; and Garden Homes was organized to relieve a low cost housing shortage. Oregon Physicians' Service, on the other hand, entered a field already occupied by privately operated insurance companies, though there may have been features of the private plans to which physicians could properly take exception.

We mention the distinction in order to point out that the cases cited by the plaintiff would not necessarily require a granting in the circuits which rendered them the exemption which the plaintiff seeks. Compare *United States v. Pickwick Electric Membership Corporation,* (6th Cir 1946) 158 F2d 272, with *Chattanooga Automobile Club v. Commissioner,* (6th Cir 1950) 182 F2d 551, and *Industrial Addition Association v. Commissioner,* (6th Cir 1945) 149 F2d 294. We do not rely on the distinction, but disagree with the conclusion of the court in each of the three cases since, in our opinion, none of the taxpayer petitioners were

"operated exclusively for the promotion of social welfare."

Adopting a more stringent test for exemption are the following federal cases: *Consumer-Farmer Milk Cooperative v. Commissioner,* (2nd Cir 1950) 186 F2d 68; *Chattanooga Automobile Club v. Commissioner,* (6th Cir 1950) 182 F2d 551; *Automobile Club of St. Paul v. Commissioner,* (1949) 12 TC 1152; *Amalgamated Housing Corporation v. Commissioner,* (1938) 37 BTA 817, affd per curiam, (2nd Cir 1940) 108 F2d 1010; *Industrial Addition Association v. Commissioner,* (6th Cir 1945) 149 F2d 294.

*Consumer-Farmer Milk Cooperative v. Commissioner,* supra, tested the claim of a milk producers' and consumers' cooperative to exemption as a "civic league or organization." The cooperative distributed patronage refunds out of profits to both producers and consumers. It conducted educational programs directed at the public at large on behalf of certain reforms in the milk industry which it thought desirable. The cooperative competed with other milk distributors. The court of appeals for the second circuit affirmed the Tax Court in refusing exemption. The following language of that decision was cited with approval by the State Tax Commission in denying relief to Oregon Physicians' Service:

> "The phrase 'not organized for profit' is conjunctively linked with the phrase 'but operated exclusively for the promotion of social welfare.' The necessary implication is that the organization's net income must be considered 'profit' within the prohibition of section 101 (8) unless the income is devoted exclusively to promotion of social welfare. It is for this reason that a consideration of the taxpayer's dominant and controlling purpose is necessary. If that purpose, as in the present case,

is primarily to benefit the taxpayer's membership economically, and only incidentally to further larger public welfare, then net income must be characterized as 'profit' for purposes of section 101 (8)."

The circuit court concluded that:

"* * * the petitioner's self-regarding purpose, as evidenced by payments of patronage dividends to its members, so far over-shadows the incidental charitable and educational purposes as to make relief from taxation unjustifiable. * * *"

and stated:

"* * * Laudable as some of the cooperative's purposes may be, the phrase 'social welfare' would be unrecognizably distorted if stretched to include activities which result primarily in financial gain to individual members. * * *"

The court took note of *United States v. Pickwick Electric Membership Corporation* and of certain factual differences which the commissioner (defendant) urged as distinguishing it. It concluded: "Unless these differences are sufficient to distinguish it from the case at bar we must respectfully decline to follow it."

*Chattanooga Automobile Club v. Commissioner,* supra, and *The Automobile Club of St. Paul v. Commissioner,* supra, denied exemptions to member clubs of the American Automobile Association. These "clubs" charged an annual membership fee which entitled members to receive a substantial number of automotive services—emergency road repairs, tourist and road information, bail bond and the like. No rebates or other payments out of earnings were made to members. Employees of the organizations received salaries but directors did not, and the clubs expended part of their income in sponsorship of highway education programs

directed at the general public. In *Chattanooga Automobile Club v. Commissioner* the court dismissed the claim of exemption under 26 USCA (IRC 1939) sec 101 (8) with the brief words:

"* * * Nor can petitioners be exempted from taxation as civic leagues, for neither is 'operated exclusively for the promotion of social welfare.'"

In *Automobile Club of St. Paul v. Commissioner* the Tax Court stated:

"* * * From the facts we have found herein, it is obvious that the income earned by petitioner was not devoted exclusively to charitable, educational, or recreational purposes, but largely inured to the direct benefit of the individual members by way of services of a commercial nature rendered to them by petitioner at lower rates than they would have to pay elsewhere."

*Amalgamated Housing Corporation v. Commissioner,* supra, rejected the exemption claim of a housing corporation organized as a "limited dividend" company under New York law. The purpose of the company was to provide apartment housing for low-income families. Preferred and common stock was issued, the latter only to tenants of the apartments. Both classes of stock bore interest limited to 6 per cent. Salaries paid to officers and employees of the corporation were small and much work was contributed free of charge. The Board of Tax Appeals reasoned that the New York law intended to provide a profit incentive for investors as a means of increasing the supply of housing. It indicated its disapproval of *Garden Homes Co. v. Commissioner,* (7th Cir 1933) 64 F2d 593, discussed above, and adopted the view that any distribution of income to members of a company is "profit" under section 101 (8) of the 1939 code.

*Industrial Addition Association v. Commissioner,* supra, denied exemption to an organization which had been attempting to persuade industry to locate in Dyersburg, Tennessee. The association acquired some lands by selling certificate interests at $300 apiece to local citizens, and the land thereafter was leased to cotton mills. The certificates carried 6 per cent interest, and if the mills exercised an option to purchase the land, the certificate holders were to receive the face value of their shares plus accumulated interest. The Tax Court, 1 TC 378, did not deny that the petitioner was organized for the "promotion of social welfare," but ruled that it was not organized "exclusively" for that purpose. It declined to treat the dividends as interest on indebtedness. The court of appeals affirmed "upon the reasoning" of the Tax Court.

On the basis of facts pleaded in its petition there are two groups which may benefit economically from the plaintiff's program—the participating physicians (Class A members) and the participating laymen (Class C members). In a sense the participating physicians are "employees" of the plaintiff, receiving fees under a contract schedule for services performed. Whether the economic interest of the physicians is of such a character as to defeat the asserted exemption is not an issue to be settled by demurrer, but rather is a question of fact. We can not take judicial notice that the physicians received or expected to receive any greater financial rewards by reason of the plaintiff's existence than would have been otherwise the case. That a company pays substantial fees and commissions to its agents has been held not to deprive it of a nonprofit tax-exempt status so long as such fees can be characterized as "reasonable compensation." *Forest Lawn Memorial Park Association v. Commissioner,*

(1941) 45 BTA 1091. The problem presents difficulties, for a corporation established for charitable ends may engage a bureaucracy of employees and distribute so much of its gross income as salaries that the organization may truthfully be said to exist as much for the benefit of its employees as for any other purpose. The problem is well illustrated by *Debs Memorial Radio Fund v. Commissioner*, (2nd Cir 1945) 148 F2d 948. In this case exemption under sec 101 (8) of the 1939 code was granted by a divided vote of the court to a radio broadcasting company operated by the Debs Memorial Fund. The fund was organized as a corporation under New York law to operate station WEVD as a "free public radio forum for the dissemination of liberal and progressive social views." Some no par stock was issued, but the bylaws did not permit dividends to be distributed. All profits were to be turned into improvement of broadcasting facilities or used for "civic, educational and cultural purposes." In order to support itself the station sold commercial advertising and carried commercially sponsored programs, but it also carried several "sustaining" programs of a civic and educational character. The station had a gross income of nearly $300,000 a year. It did not compensate its officers and directors, but its commissions to advertising salesmen alone amounted to more than $50,000 a year while net income was much smaller. The company at all times tried to increase its commercial business, and spent substantial amounts to improve its broadcasting facilities. In dissenting from the allowance of exemption, Judge Chase cited with approval the finding of the Tax Court that more than one-third of the company's time was devoted to operation of a commercial station for profit and that "use of that income is not only in support of its wel-

fare function but also in support of its commercial function."

We need not indicate here our approval or disapproval of the result in *Debs Memorial Radio Fund v. Commissioner,* since, as we have stated, the profit motive of the participating physicians is not properly to be decided by demurrer. However, there are averments in the petition which set forth the method of fixing fees paid to doctors which alone would lead us to sustain the demurrer. It is alleged in the petition that fees are set in the first instance by a contract schedule but that Oregon Physicians' Service may pay the physician a smaller amount. If smaller amounts are paid the plaintiff's board of trustees may in its discretion direct that net income for the current accounting period be distributed to physicians to bring their fees up to the scheduled rates for the period.

So long as the scheduled fee is not made chargeable against the association as a sum fixed in amount, to which the physician becomes entitled indefeasibly by performing his services, but remains indefinite until the trustees determine—with an eye to the balance sheet—what shall be paid, we hold that the association fails to show that it is "not organized for profit" or that it is "operated exclusively for the promotion of social welfare." At least, in order to avoid the force of a demurrer, the petition must set forth some plea of justification for this arrangement.

Again, examining the allegations of the petition with regard to the lay membership (Class C), we conclude that there is a positive showing that "promotion of social welfare" was neither the "exclusive" object of Oregon Physicians' Service, nor even a primary object as we understand the statute. Although we take

that view, we also believe that as far as Class C membership is concerned there is no showing that the plaintiff was "organized for profit." It is alleged that the net profits of the company may be used to increase the benefits or decrease the costs to the Class C members. However, since income is derived "for the most part" from dues paid by the Class C members, the distribution of income for these purposes is no more than a readjustment of rates. To this extent we agree with *United States v. Pickwick Electric Membership Corporation,* supra. There is a saving of expense to the Class C membership, but it is not "profit" within the ordinary meaning of that word.

■ In our view the test of "social welfare" adopted by the court of appeals for the second circuit in *Consumer-Farmer Milk Cooperative v. Commissioner,* supra, is a correct one. If the "dominant and controlling" motive of the taxpayer is "primarily to benefit the taxpayer's membership economically, and only incidentally to further larger public welfare," then the exemption must be denied. A rule of thumb capable of serving the purposes of ORS 317.080 (6) in cases of this kind would very likely envision that in order for the activities of a taxpayer to entitle him to exemption as "social welfare" work they must be calculated to benefit some other group than the one which supplies the money and directs its disposition. The group benefited may be large or small, definite or indefinite in number, but in the benefaction some motive of altruism must clearly shine forth.

■ That is not the case here. Oregon Physicians' Service is a medical insurance company, and its members can have no motive beyond insuring themselves against the expenses of illness. Commendable as that

may be, it is a self-regarding purpose. The company is carried on for no other reason. Even if the plaintiff devoted its entire income above expenses to charity, we would be obliged to deny the exemption. For while it is now clearly established that a charity may carry on some commercial business without losing its exemption, *Trinidad v. Sagrada Orden de Predicadores,* (1923) 263 US 578, 44 S Ct 204, 68 L Ed 458; *Hanover Imp. Soc., Inc. v. Gagne,* (1st Cir 1937) 92 F2d 888; *Roche's Bench v. Commissioner,* (2nd Cir 1938) 96 F2d 776; *C. F. Mueller Co. v. Commissioner,* (3rd Cir 1950) 190 F2d 120; *Bohemian Gymnastic Ass'n Sokol of City of New York v. Higgins,* (2nd Cir 1945) 147 F2d 774; *Koon Kreek Club v. Thomas,* (5th Cir 1939) 108 F2d 616; *Willingham v. Home Oil Mill,* (5th Cir 1950) 181 F2d 9; *Squire v. Students Book Corp.,* (9th Cir 1951) 191 F2d 1018; *Appeal of Unity School of Christianity,* (1926) 4 BTA 61; *Sand Springs Home v. Commissioner,* (1927) 6 BTA 198; we think it is equally clear that an organization of a commercial character which obviously exists only for the benefit of its members can not claim exemption from taxation even though it pays no dividends or devotes its entire profits to charity. *Universal Oil Products Co. v. Campbell,* (7th Cir 1950) 181 F2d 451; *National Chiropractic Ass'n v. Birmingham,* (DC WD Iowa 1951) 96 Fed Supp 874; *Underwriters' Laboratories v. Commissioner,* (7th Cir 1943) 135 F2d 371; Annotation, 111 ALR 158, 160; 8 ALR2d 925, 939.

By letter dated August 30, 1954, the United States Treasury Department informed Oregon Physicians' Service that it would be exempt from federal income tax under sec 101 (8) of the 1939 code. Although the view thus taken is that of the Treasury Department for which we have high respect, this court, for reasons

stated in preceding paragraphs, must respectfully decline to adopt it. We are convinced that sound reason and the weight of authority do not warrant the grant of exemption to the plaintiff under ORS 317.080 (6). Accordingly the judgment is affirmed.