## MARIE C. LUSH *v.* DEPARTMENT OF REVENUE

Edward Ray Fechtel and Richard Smurthwaite, Husband, Johnson & Fechtel, Eugene, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered March 28, 1974.

CARLISLE B. ROBERTS, Judge.

Plaintiff appealed from a determination by the Department of Revenue of a gift tax deficiency for the calendar year 1971 in the sum of $15,194, plus interest, as set out in its notice of June 8, 1973 (No. G-98001).

The plaintiff duly filed the defendant's gift tax Form GT-2 for the calendar year 1971, indicating gifts

in a substantial amount, including four which were placed in Schedule C as exempt gifts, including the one in question, a transfer of stock to Cascade Manor, Inc., Eugene, Oregon. The only question before the court is whether the donee, in the year 1971, was an eligible donee as a charitable corporation under ORS 119.035 (1969 Replacement Part)*, which reads in pertinent part as follows:

> "There shall be excluded and exempted from the tax imposed by this chapter the amount of all gifts made during any calendar year to or for the use of:
>
> "(1) Institutions, fraternal societies, associations, funds, trusts or corporations which are organized and existing and actually engaged in carrying out benevolent, charitable, educational, scientific or religious purposes."

Cascade Manor, Inc., was incorporated in the State of Oregon on March 19, 1964. It was sponsored by several Eugene, Oregon, churches and its articles of incorporation provide that it was organized

> "A. [t]o erect, establish, operate and maintain a home or homes for elderly people on a nonprofit basis with housing facilities and services especially designed to meet the physical, social and psychological needs of the aged and contribute to their health, security, happiness and usefulness in longer living; * * *."

It has qualified under ORS 307.375 as a corporation organized and operated only for the purpose of furnishing permanent residential, recreational and social facilities primarily for elderly persons; not organized for profit; receiving not less than 95 percent of its operating gross income, excluding any invest-

---

* This section was amended by Oregon Laws 1971, ch 653, § 1, effective with respect to gifts made after January 1, 1972.

ment income, solely from payments for living, medical, recreational and social services and facilities, paid by or on behalf of elderly persons using the facilities of such corporation; and permits no part of its net earnings to inure to the benefit of any private stockholder or individual.

During the year in question, 1971, the manor had 94 fully occupied units. The initial cost per unit was from $12,000 to $25,000, but multiple units could be and were purchased. During 1971, all the units had been purchased or were contracted to be purchased by the occupants. The contract that the residents signed on admission to the manor allowed for an increase in monthly care fees as the manor's costs increased. In the event a resident is unable, eventually, to pay the monthly care fee, the manor is required, under the life-care contract, to continue to care for him.

In September 1968, the manor was classified, for federal income tax purposes, as a charitable institution and as such was exempted from federal income taxation as an organization described in Int Rev Code of 1954, § 501 (c)(3).

 Plaintiff's chief argument is that, following federal Rev Rul 72-124, 1972-1 Cum Bull 145, a charitable exemption under Int Rev Code of 1954, § 501 (c)(3), will be recognized for a home for the aged if it meets three primary needs of aged persons: the need for housing, the need for health care, and the need for financial security; and this is true even though the home, in order to retire its indebtedness, will ordinarily admit only persons able to pay its established rates and entrance fees. See the article by Robert S. Bromberg, *Non-profit homes for the aged:*

*An analysis of their current tax exempt status,* 38 J Taxation 54 (January 1973). (Citations therein indicate that Mr. Bromberg has written extensively on the tax problems of homes for the aged.)

The court takes notice that this proposition was argued at length before the Oregon Supreme Court by Donald A. Schmechel, Esq., as amicus curiae, on behalf of the American Association of Homes for the Aging in the case of *Friendsview Manor v. Tax Com.,* 247 Or 94, 420 P2d 77, 427 P2d 417 (1967). The court stated (at 99) that it would assume, without deciding, that caring for the aging, rich or poor, is a charitable purpose. However, the argument was not deemed apropos in view of the particular facts in that case, and, based on similar facts, is deemed by the court not to be significant here.

 Plaintiff's second major argument turns on the use of the word "exclusive" in the provision of ORS 307.130 (not found in ORS 119.035), together with an elaborately detailed examination of the text of *Friendsview Manor, supra,* and of *Methodist Homes, Inc. v. Tax Com.,* 226 Or 298, 360 P2d 293 (1961), the appeals in those two cases arising from the need to interpret "charitable" as used in ORS 307.130 (1) in respect to corporate homes for the elderly. The argument is more ingenious than persuasive. The same definition of "charitable" is required under each statute. The principles established in the two cases require this court to rule that Cascade Manor, Inc., is not presently a charitable corporation.

Counsel have presented the case in a most able manner and greatly aided the court by filing excellent briefs but, in the view of the court, after careful consideration of the facts, the precedents of *Friendsview*

*Manor, supra,* and *Methodist Homes, Inc., supra,* clearly require a decision sustaining the defendant. The court is also impressed by the principles set out in *Ore. Physicians' Serv. v. State Tax Com.,* 220 Or 487, 349 P2d 831 (1960) (also cited in *Friendsview Manor, supra*), in which Mr. Justice ROSSMAN observed, at 493:

> "In determining whether or not the circuit court was correct in dismissing the complaint we start with the well settled rule that tax exemption statutes are strictly construed against the individual who claims their benefit. [Citations omitted.] The reason underlying this rule of construction goes deeper than mere protection of the public fisc. Not uncommonly, charitable and other non-profit associations compete actively with private business. To the extent that a charitable corporation is relieved of the tax burden it gains a competitive advantage. To the extent that such tax relief is not based on reasonable classification for sound public ends it is a denial of equal protection of the laws. Strict construction of exemption statutes thus with us has constitutional overtones. [Citations omitted.]"

At 506, Mr. Justice ROSSMAN sets out a "rule of thumb" which, as the court views the evidence in the present suit, is applicable:

> "* * * If the 'dominant and controlling' motive of the taxpayer is 'primarily to benefit the taxpayer's membership economically, and only incidentally to further larger public welfare,' then the exemption must be denied. A rule of thumb * * * in cases of this kind would very likely envision that in order for the activities of a taxpayer to entitle him to exemption as 'social welfare' work they must be calculated to benefit some other group than the one which supplies the money and directs its disposition. * * *"

Considering the facts, the statute and the legal precedents set out by the Oregon Supreme Court, the defendant's notice of gift tax deficiency, No. G-98001, dated June 8, 1973, should be and hereby is affirmed.