# IN THE OREGON TAX COURT

## SALEM NON-PROFIT HOUSING, INC.,
*v.*
## DEPARTMENT OF REVENUE
(TC 1706)

David R. Kluge, Sheridan, and David L. Slansky, McMinnville, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered November 22, 1982.

**CARLISLE B. ROBERTS, Judge.**

The plaintiff, Salem Non-Profit Housing, Inc., appealed from defendant's Order No. VL 81-1171, dated

October 28, 1981, denying plaintiff's claim for a property tax exemption for tax years beginning 1978-1979 to the present.

Plaintiff is organized under the provisions of the Oregon Nonprofit Corporation Law, ORS chapter 61. Its Amended Articles of Incorporation, dated January 15, 1976, set out the purposes for which the corporation is organized. The most significant are found in Article II:

"(a) To engage in any lawful activities for which corporations may be organized under Chapter 61 of the Oregon Revised Statutes and, more specifically, to provide on a non-profit basis housing for lower income families where no adequate housing exists for such groups; to undertake the purchase of housing and the rehabilitation of such housing where appropriate; and to sell or rent such housing pursuant to the National Housing Act, as amended; to provide continued social services for the benefit of individual purchasers of such housing in order to aid them in achieving and sustaining homeownership; and to perform activities which give reasonable promise that a stable environment will be created in the neighborhood of such housing. Such housing referred to above, may include housing for families displaced from urban renewal areas, or as a result of major disaster, where no adequate housing exists. Such housing may also include facilities for the elderly and handicapped."

The articles further provide that, in order to accomplish its work, the corporation is authorized to execute agreements with the federal Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner in the Department of Housing and Urban Development (HUD). The corporation may execute a loan resolution to obtain financing through the federal Farmers Home Administration (FmHA). Article VI provides that, in the event of the dissolution of the corporation, its property shall not be conveyed or distributed to any individual or organization created or operated for profit, but shall be conveyed or distributed only to an organization or organizations created and operated for nonprofit purposes.

The corporation, from its inception in January 1976, was qualified as an exempt corporation for federal income tax purposes under IRC (1954) § 501(c)(4) as an organization "not organized for profit but operated exclusively for the promotion of social welfare * * *, and the net earnings of which are

devoted exclusively to charitable, educational, or recreational purposes." (In 1980, it qualified as a charitable organization under IRC (1954) § 501(c)(3) as a corporation organized and operated exclusively for a charitable purpose, no part of the net earnings inuring to the benefit of any private shareholder or individual.)

In 1977, the corporation completed the building of a 40-unit apartment complex in Silverton, Oregon, known as "Silvertowne," financed by a Farmers Home Administration, § 515, loan. The plaintiff argues (Pl Tr Br, at 1.)

"* * * The property was designed for, is and has been exclusively used by retired persons over the age of 62, most of whom are living on reduced or low incomes. * * *"

In 1977, the rents chargeable to lessees were $130 per month for one-bedroom units and $150 for two-bedroom units. The rents are determined as required by the contract to repay the FmHA loan, with one percent interest, and to maintain the property over a 20-year period. To the degree that the tenants are unable to make payment of the low rentals required, HUD reimburses the corporation for the difference, without expectation of repayment.

■        The corporation, pursuant to ORS 307.162, applied to the County Assessor of Marion County for property tax exemption under ORS 307.130 (as an exempt, charitable corporation) for the tax year 1978-1979 and thereafter. This application was denied. The assessor, testifying in this suit, stated that he found the purposes of the corporation to be commendable but that he found no aspect of "charity" in its work, the funds required for carrying out the corporate purpose being contributed by the tenants of the property and by the federal government. On appeal of the assessor's determination to the Department of Revenue, the defendant affirmed the assessor's decision.

In ORS 307.130 (1977 Replacement Part), the pertinent parts of the exemption statute read:

"* * * [T]he following property owned or being purchased by incorporated * * * charitable * * * institutions shall be exempt from [ad valorem] taxation:

"(1) * * * [O]nly such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the * * * charitable * * * work carried on by such institutions."

This provision calls for a definition of "charitable," a word not defined in the statute.

■ The fact that the plaintiff is a nonprofit corporation does not conclusively endow it with the attributes of a charity, nor does the fact that it operates at a loss. *Methodist Homes, Inc. v. Tax Com.,* 226 Or 298, 311, 360 P2d 293, 299 (1961).

■ The fact that the plaintiff was recognized by the federal Internal Revenue Service in 1976 as a social welfare agency pursuant to IRC (1954) § 501(c)(4) and in 1980 as a charitable organization within IRC (1954) § 501(c)(3) does not answer the question before the court. Corporations with these designations must seek Oregon property tax relief under the provisions of ORS chapter 307. The use of the property is the criterion in this suit, and the use must be charitable within Oregon's definition of "charitable."

The fact that dedicated members of plaintiff's board of directors have unselfishly contributed hundreds of unpaid hours to the creation and administration of a highly commendable project does not make the operation charitable per se. Neither the property tax nor income tax laws reward such personal services.

■ Exemptions for taxation do not originate with the courts; they are privileges accorded as a matter of legislative grace. *Plywood & Veneer Local v. Commission,* 2 OTR 520 (1967).

Exemption statutes are strictly (but "reasonably") construed, so as to give effect to the legislative intent. There is constant pressure on the courts to enlarge the exemption statutes which, in turn, imposes a responsibility on the trial judge not to exceed the legislature's parameters and not to impose on all property taxpayers an additional burden for the sake of another's exemption, unless clearly provided by statute. The society is overwhelmed by charitable needs and the court must use a strict construction of the legislative language to avoid exceeding the monetary limits which the Legislative Assembly deemed affordable.

The word "charitable" has raised difficulties in its application to tax exemptions, requiring courts to decide many tax cases. The typical dictionary definition of "charitable" is inchoate: "Generous in gifts to relieve the needs of

others." The word "gifts" is equally inchoate: "Something given; a present." Some guidance for Oregon is found in *Methodist Homes, Inc. v. Tax Com., supra,* at 307 and 309-310. Case studies show that legislative intent as to the scope of the exemption can only be determined on a case-by-case basis, considering clearly delineated facts. *Ore. Physicians' Serv. v. State Tax Com.,* 220 Or 487, 349 P2d 831 (1960). Plaintiff meets many of the typical requirements of a charity.

■      The problems of judicial construction described above have resulted in the recognition by judges that one criterion useful in determining whether an exemption should be awarded an allegedly charitable, private corporation is whether the activities in which it engages *lessen the normal burdens of government;* for example, by aiding individuals gravely in need of assistance because of emergency situations or because of chronic illness or poverty. "The recipient of the exemption may be supposed to be doing part of the work which the state would otherwise be under an obligation to do." (See the discussion in *Oregon Stamp Society v. Commission,* 1 OTR 190, 200 (1963).)

The question in this suit is: Other than the personal services of the board members (which are not counted), what was *given?*

The facts in this case are clear. The corporation is working under a federal statute which seeks to upgrade the quality of life of a specific group who are in an economic range above the defined poverty level. Federal funds have been approved to construct reasonably adequate living quarters for qualified people, none of whom is on welfare. The procedure involves the application to the federal authority of a municipality or a nonprofit corporation (such as the plaintiff), chartered under state law and controlled by a board of able, responsible and well-disposed citizens. The organization then lays the plans for such housing in its particular area, to be financed by a federal agency over a substantial period of years at interest of one percent per year. A contract requires that minimum rentals charged for each living unit of housing shall be sufficient to amortize the mortgage, maintain the property over the mortgage period, and pay the usual expenses of a rental property (e.g., staff salaries and wages, utilities, insurance and the like; property taxes apparently are not specified).

The nonprofit organization's administration is given discretion to require a lesser payment than the minimum rental under certain conditions, whereupon another federal agency, on application and explanation by the project's administration, without expectation of repayment, will contribute funds to offset the deficit as necessary to meet the mortgage requirements.

In brief, the "giving" is from the utilization by the federal agencies, under statute, of moneys originally paid as taxes to the federal government by all federal taxpayers. The plaintiff is not an eleemosynary institution. No gift is involved; ergo, there is no "charity" as is implicitly required by the Oregon statute.

Defendant's brief in support of this thesis cited a number of cases, several of which have been proved not in point by plaintiff's zealous counsel. A few cases, however, tend to support the defendant's argument and this court's conclusion: *Metropolitan Hsg. Corp. v. Board of Property, etc.,* 28 Pa Cmwlth 356, 368 A2d 837 (1977); *Waterbury First Church Housing, Inc. v. Brown,* 170 Conn 556, 367 A2d 1386 (1976); and *County of Douglas v. OEA Senior Citizens, Inc.,* 172 Neb 696, 111 NW2d 719 (1961); and *see Ore. Physicians' Serv. v. State Tax Com.,* 220 Or 487, 349 P2d 831 (1960).

In the present suit we are confronted with a commendable project which the United States Congress espoused, apparently in the belief that the taxpayers of the nation could afford to improve the living conditions of a somewhat marginal group (economically). Federal money was appropriated for that purpose.

In Oregon, a number of statutory provisions aid the indigent and elderly through specific forms of tax relief. See ORS 310.635 (rental assistance); ORS 310.640 (homestead tax refund); ORS 310.641 (renter refund); ORS 310.830 (partial tax payment); ORS 311.668 (deferral of tax on homestead); and ORS 314.290 (deferral of recognition of tax gain). The state has further provided an elaborate plan under its Housing Authorities Law (ORS 456.055 to 456.230) to aid in housing low-income individuals. But the Legislative Assembly has given no clear signal to the courts that the housing property of the plaintiff should be exempted from the ad valorem property tax in this state.

The defendant's Order No. VL 81-1171 is affirmed. No costs to either party.