# IN THE OREGON TAX COURT

## STATE ex rel NORTHWEST MEDICAL LABORATORIES, INC.

*v.*

## WILCOX
(TC 2234)

Michael J. Morris, Grebe, Gross, Peck, Osborne & Dagle, P.C., represented petitioner.

Paul G. Mackey, Assistant County Counsel, Multnomah County, Oregon, represented respondent.

Ruling for petitioner rendered December 11, 1985.

**CARL N. BYERS, Judge.**

This is a mandamus proceeding brought under ORS

311.215. Petitioner is the owner and operator of a for-profit medical laboratory. Petitioner competes for business with the medical laboratories of several hospitals. The hospitals are charitable organizations and their property is exempt from taxation under ORS 307.130. Petitioner believes that the property used by the hospital laboratories does not qualify for property tax exemption because of the laboratories' outside work. Petitioner has obtained information about the operation of the hospital laboratories and furnished this information to the respondent assessor. Respondent declined to take action to place the hospitals' laboratory properties on the rolls. By this mandamus proceeding, petitioner seeks an order from the court requiring respondent to give notice to the hospitals of his intent to place the hospital laboratory properties on the rolls in accordance with ORS 311.207 through 311.211.

Based on the petition, the court issued an alternative writ of mandamus. Both parties appeared at the time set for the show cause hearing at which time respondent orally set forth its position, denying the allegations of the alternative writ.[1]

The evidence adduced by the parties at the show cause hearing established that petitioner is a for-profit medical laboratory serving hospitals, physicians, industry and individuals in the Portland area. Petitioner's concern is with the laboratories of the following hospitals: Good Samaritan, Portland Adventist, Emanuel, Physicians and Surgeons, and Providence Medical Center. All of these laboratories appear to perform standard testing and analysis, both for the hospitals and for physicians and others in the community. In addition, the Metropolitan Hospital Laboratory is a "referral" lab which performs specialized tests and analyses. Because of its specialized equipment and purpose, Metropolitan Hospital Laboratory performs the specialized tests for all of the hospitals named above. However, Metropolitan also provides some standard lab services and is in direct competition with petitioner.

The evidence supports petitioner's contention that at

_____

[1] Respondent did not understand that the alternative writ serves the function of a complaint and it is necessary to file a responsive pleading in order to join the issues. *State ex rel Kashmir Corp. v. Schmidt,* 291 Or 603, 633 P2d 791 (1981).

least in some instances the hospital laboratories obtain significant revenues from work done for "outpatients." Such labs solicit and receive lab work from private physicians, whose patients may never have any contact with the hospital. Likewise, there is evidence that the laboratories perform drug testing and other lab work for industry and, in some cases, provide lab work for veterinarians. (Exhibit 13, at 4.)

■ Respondent readily acknowledged that the information furnished his office by petitioner was "credible" in the sense of being trustworthy and believable. However, respondent indicated that, although believable, the information had not persuaded him that the property of the medical labs in question failed to qualify as exempt under ORS 307.130. In coming to this conclusion, respondent considered the total income of the exempt hospital compared to the laboratory income. Inasmuch as he considered the laboratory income insignificant overall, he concluded that the laboratory property remained exempt.

Respondent did indicate that as a result of his present understanding of the relationship of Metropolitan Hospital Labs to the hospitals, he now has some question as to whether the Metropolitan Hospital Lab property is exempt. In addition, respondent indicated on cross-examination that he had made inquiries of the hospitals in question but had not received satisfactory answers or the hospitals had refused to answer. Admitting that convenience was a factor, respondent testified that no follow-up action was taken. The respondent viewed the situation as "difficult" in determining the primary use of the property and distinguishing between those uses which are exempt and those which are not.

■ Based on the evidence submitted, the court concludes that respondent did receive credible information that raised or should have raised questions in his mind as to whether the hospital laboratory properties were exempt. Knowing that exemptions are strictly construed and that those who seek to have their property exempt must clearly bring themselves within the exemption and, further, that the party claiming exemption has the burden of proof, respondent should have taken further steps to ascertain the information needed to make a sound decision. As petitioner succinctly pointed out, respondent does not have a duty to prove the property is

taxable. Rather, the hospitals have the burden of proving that they are entitled to the exemption. The burden of producing the necessary information to establish entitlement to exemption is on the hospitals, not on the assessor.

At this juncture it seems appropriate to consider the two issues facing respondent. Those issues appear to be:

(1)  Whether lab work performed for "nonhospital patients" is nevertheless within the circle of the hospital's charitable purposes?

(2)  If the hospital laboratories perform services for nonhospital patients must the laboratories separately prove their entitlement to exemption by establishing charitable services rendered?

Petitioner contends that performing of lab services for nonhospital patients renders the laboratory properties taxable. This contention appears to assume that lab work for nonhospital patients is outside the circle or scope of the charitable purposes of the hospital. The very difficulty experienced in attempting to adequately describe that class of lab customers who have no relationship to the hospital other than receiving laboratory services hints of an answer. If the purpose of a hospital is to treat the sick and injured, laboratory work would seem to fall within that purpose. If such is the case, it would not seem relevant whether the person receiving the laboratory services is, has been or ever will be a patient of the hospital.

Laboratory services are to be distinguished from other ancillary services provided by a hospital. For example, a hospital may maintain a cafeteria and kitchen which serves members of the general public, such as visitors, as well as hospital staff and patients. This service facilitates the accomplishment of the hospital's purposes. However, the preparing and selling of food for consumption is not in and of itself part of the hospital purpose. Consequently, if the public use of a hospital cafeteria became predominant and hospital use only incidental, the cafeteria property would fail to qualify for exemption. This conclusion assumes that the hospital charter or articles of incorporation do not provide as a purpose providing food for the poor and that the cafeteria is not operated as a charity.

On the other hand, services provided by the hospital

laboratories are in fact part of what the hospital is organized for, *i.e.,* the treatment of injuries and illnesses. If this is the case, the very rendering of lab services makes the recipient a "patient" of the hospital. It would appear appropriate for the respondent to examine the respective hospital charters and determine whether laboratory services provided to persons outside the hospital and having no other contact with the hospital fall within the scope of the hospital's charitable goals.[2]

■■    In considering the second issue set forth above, we start with the premise that hospitals are not inherently entitled to exemption. *Benton Co. v. Allen et al.,* 170 Or 481, 133 P2d 991 (1943). The Oregon Supreme Court, in *Methodist Homes, Inc. v. Tax Com.,* 226 Or 298, 360 P2d 293 (1961), set forth several tests which are relevant in determining whether a hospital or any charitable organization is entitled to property tax exemption. The purpose of these tests is to winnow out those organizations which fail to implement an eleemosynary philosophy. Charity involves giving. If there is no gift involved, there is no charity. *Salem Nonprofit Housing, Inc. v. Dept. of Rev.,* 9 OTR 265 (1982). In keeping with the "strict but reasonable" construction of the statute, "charity" must be distinguished from other forms of a hospital management. A hospital management plan based on a Robin Hood philosophy is not charity. Likewise, a distinction must be made between charitable aid or service, which is rendered without expectation or hope of payment and uncollectible bad debts, where aid or service is rendered with expectation of payment but such expectation is not met. Laboratories and hospitals which perform services for others may have uncollectible accounts by reason of the indigency of the person responsible for payment, but writing off or cancelling such an account is not charity. *Ackerman v. Phys. & Surgeons Hosp.,* 207 Or 646, 668, 288 P2d 1064, 298 P2d 1026 (1956).

If the hospital laboratories solicit business in the

---

[2] It is possible that if a hospital is religiously owned, respondent may need to consider the relationship of the laboratories to the religious functions as well. *See German Apos. Christ. Church v. Dept. of Rev.,* 279 Or 637, 642, 569 P2d 596 (1977).

Also of interest but of no precedential value are the federal income tax cases dealing with the same problem. *See,* for example, *St. Luke's Hospital of Kan. City v. U.S.,* 494 F Supp 85 (1980), 46 AFTR2d 80-5200, and Rev Rul 85-110, 1985-30 IRB 18.

open community and laboratory property is used primarily to perform services for persons or parties having no other connection with the hospital, then the laboratories must establish the fact that they perform charitable work. The hospital laboratories cannot hide beneath the hospital's overall charitable cloak unless they restrict their activities to servicing those who enter the hospital doors.

■ Respondent indicated in his testimony that he remains "unconvinced" that the hospital laboratories are not exempt. The tenor and structure of ORS 311.209 incorporates the "when in doubt" principle. That is, in dealing with exemptions, if there is any doubt, the assessor should give the notice as provided in ORS 311.209 and place the burden on the person so notified to establish the right to the exemption. It also appears to the court that respondent is operating under a misconception with regard to property tax exemption. The amount of revenue realized by the hospitals from their laboratory properties is not necessarily an indication of whether the property is being used for exempt purposes. Likewise, the fact that an organization may be large does not entitle it to receive a large amount of nonrelated income. The test, for purposes of ORS 307.130, is not how much income is realized from property, but the use to which it is put.

A peremptory writ will issue, directing the respondent to give the notice as provided in ORS 311.209 and to make a determination as set forth in ORS 311.211.