[File No. 6700.]

UNEMPLOYMENT COMPENSATION DIVISION OF THE WORKMEN'S COMPENSATION BUREAU, a Department of the State of North Dakota, Appellant, v. PEOPLE'S OPINION PRINTING COMPANY, a Corporation, Respondent.

(295 N. W. 656.)

Opinion filed January 6, 1941.

*W. Ray Reichert,* for appellant.

444

*Ritchie & Ritchie,* for respondent.

*Nelson A. Mason* and *Doherty, Rumble, Butler, Sullivan & Milchell,* amici curiæ.

MORRIS, J. This is a suit by the Unemployment Compensation Division of the Workmen's Compensation Bureau of the state of North Dakota to recover from the People's Opinion Printing Company, a corporation, for contributions claimed to be due under the North Dakota Unemployment Compensation Act. This act is chapter 232, N. D Session Laws 1937, as amended by chapter 215, N. D. Session Laws 1939. The controversy in this case involves the number of individuals on the pay roll of the defendant.

The plaintiff contends that in 1936, 1937, and 1938, the defendant had in its employ eight or more individuals performing services for it within the state of North Dakota, and that such services were performed for some portion of a day in each of twenty different weeks within each of these years, and that the defendant therefore became liable for the contributions prescribed by the statute. On the other hand, the defendant contends that it employed less than eight individuals and is, therefore, not liable to pay the contributions.

The determination of the number of individuals employed depends

upon whether the president of the corporation is to be considered an employee within the terms of the act. If he was such an employee, the number of employees was eight and the defendant is liable. If he was not such an employee, then the number is not sufficient to bring the defendant within the purview of the act.

The Unemployment Compensation Act states that an "employer" means, "Any employing unit which for some portion of a day in each of twenty different weeks, whether or not such weeks are or were consecutive, within either the current or the preceding calendar year, has or had in employment eight or more individuals." (§ 2 (f) (1)).

Section 2 of the act further states:

"(g) 'Employee' means every individual, whether male, female, citizen, alien, or minor, who is performing, or subsequent to January 1st, 1936, has performed services for an employer in an employment subject to this Act.

"(h) (1) 'Employment,' subject to the other provisions of this subsection, means service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied."

No contention is made that the president of the defendant corporation received wages. It is contended, however, that he did perform services under a contract of hire within the meaning of the act. The word "service" is not defined.

In order to determine whether the president of the corporation was employed by it, we must next examine the facts. They disclose through uncontradicted testimony that he did not have anything to do with the active management and conduct of the business. He had no personal knowledge of the various employees and did not hire or fire them. He received no compensation of any kind for work done for the defendant, as its president or otherwise. His entire working time was devoted to employment in other businesses. He owned fifty per cent of the defendant's stock. The by-laws of the defendant corporation required him to attend and preside at meetings of the directors and stockholders, countersign checks and certificates of stock, sign all notes or other evidence of debt, and perform, generally, the various duties which ordinarily fall upon the president of a corporation. During the time in controversy, the president signed various monthly and quarter-

ly reports to the plaintiff. He also signed a protest in behalf of the corporation, objecting to being required to submit these reports.

From these facts we deduce that the acts, which the president performed in behalf of the corporation, were gratuitous and were only formal in nature. They were such acts as were required for maintaining the defendant as a corporation, as distinguished from acts necessary to the management and conduct of the corporation's business.

The plaintiff contends that "it seems clear that the legislature intended in the Unemployment Compensation Law to cover *all* individuals performing a service for others, unless such service is specifically excluded from the Act."

We cannot agree with this contention. Had the legislature so intended, it could have stated that intention in language as clear and broad as that used by the plaintiff. Instead, the legislature saw fit to employ many paragraphs in describing the scope of the act with respect to individuals and employments to be covered.

The case of Davie v. J. C. Mandelson Co. — N. H. —, 11 A. (2d) 830, is in point. In that case, the president of the defendant corporation gratuitously acted and presided at the meetings and signed stock certificates. The court said: "We do not think that the words 'service . . . performed . . . under any contract of hire, written or oral, expressed or implied,' construed according to 'the common and approved usage of the language' describe the services gratuitously rendered by Mrs. Mandelson to the defendant. The acts performed by her as president of the corporation are of a purely ceremonial or formal nature required only for the maintenance of the corporate organization of the defendant and are in no way connected with the conduct of the business in which it is engaged. It has not been suggested that the words of the statute have acquired any 'peculiar . . . meaning in làw.' We therefore hold that she is not a person in the 'employment' of the defendant within the meaning of the statute. . . ."

In Brannaman v. Richlow Mfg. Co. 106 Colo. 317, 104 P. (2d) 897, the question was whether a noncompensated corporate secretary, whose duties were limited to the performance of formal functions required by the statutes and the company's by-laws, and, who performed no other services, should be included as an employee within the terms of the

employment compensation statute of Colorado. That statute contained the same definition of "employment" as the North Dakota act. The court held that she was not in the employment of the company and that her election and assumption of office did not constitute a contract of hire.

The supreme court of Oklahoma reached the same conclusion in another case involving a non-compensated corporate secretary. In State ex rel. Murphy v. Welch & Brown, — Okla. —, 103 P. (2d) 533, emphasis was laid on the meaning of the term "contract of hire" as used in the Oklahoma Unemployment Compensation Act. It was held that the secretary was not an employee under a contract of hire.

Higgins v. Bates Street Shirt Co. 129 Me. 6, 149 A. 147, involves the determination of whether the president of a corporation was an employee within the meaning of the Maine Workmen's Compensation Act. The court held that he was not an employee and that the duties that he performed were simply those pertaining to his office and said: "When the president of a corporation acts only as such, performing the regular executive duties pertaining to his office, he is not an employee within the meaning of the statutory definition."

The cases heretofore cited express the correct interpretation of the provisions of the statute in controversy here. The president of the People's Opinion Printing Company was not an employee engaged in such an employment as is contemplated by chapter 232, N. D. Session Laws 1937. The defendant did not have as many as eight employees and is not liable to make the contributions to the North Dakota Unemployment Compensation Fund required by that statute.

The plaintiff also suggests that the defendant should be liable under the terms of the North Dakota Unemployment Compensation Act by reason of the fact that it is subject to the Federal Unemployment Compensation tax in event that it does not contribute to the state fund. We need not determine whether or not it is subject to the Federal tax. We are only construing a statute passed by the North Dakota legislature. What the Federal Government may or may not be entitled to collect in the way of a Federal tax does not control the interpretation of the North Dakota statute.

Judgment was entered against the plaintiff for a dismissal of the action and for costs. The plaintiff contends that in any event, the

judgment is erroneous to the extent of the costs taxed, and asserts that a prevailing defendant in such an action is not entitled to costs against the plaintiff.

The plaintiff's contention is based on this provision contained in § 15(b).

"Collection. If, after due notice, any employer defaults in any payment of contributions or interest thereon, the amount due shall be collected by civil action in the name of the Bureau and the employer adjudged in default shall pay the costs of such action."

It is argued that the legislature, having specifically provided for the taxation of costs against the defendant and not having mentioned costs against the Bureau, should the defendant prevail, none can be collected.

The plaintiff cites the general rule prevailing in this state, that costs are the creature of and can only be awarded when authorized by statute. Engholm v. Ekrem, 18 N. D. 185, 119 N. W. 35; Casseday v. Robertson, 19 N. D. 574, 125 N. W. 1045; Whitney v. Akin, 19 N. D. 638, 125 N. W. 470; Butler Bros. v. Schmidt, 32 N. D. 360, 155 N. W. 1092; Swallow v. First State Bank, 35 N. D. 323, 160 N. W. 137.

Section 7794, N. D. Compiled Laws 1913, provides for the allowance of costs as a matter of course to a prevailing defendant in an action for the recovery of money. This is such an action. Costs in this type of action have been allowed to the prevailing party since territorial days. Code Civ. Proc. 1877, § 379.

The defendant would clearly be entitled to costs under the general statute above cited unless it be as the plaintiff contends, that the provision for costs to the plaintiff contained in § 15 indicates an intention on the part of the legislature that no costs be recovered by a prevailing defendant in a suit brought against him to collect contributions. The construction contended for by the plaintiff embodies a departure from the long-established policy in this state, with respect to the right of a prevailing party to collect costs. Had the legislature intended to make such a departure, it could have, in a few words, clearly so expressed itself and not have left the matter of its intention to nebulous implication.

Section 15 deals with the collection of contributions and refunds in event of overpayment. It provides for the collection of interest on

past due contributions and gives precedence on court calendars to collection actions. In general, it provides what the Unemployment Division of the Workmen's Compensation Bureau may collect and how. We see in this section no implication that should an action be brought in which the plaintiff is not entitled to prevail, costs may not be taxed against it the same as against an individual who makes a similar unsuccessful attempt to secure a judgment to which he is not entitled. Thus, we determine that there is no error in rendering judgment against the plaintiff for costs.

Affirmed.

NUESSLE, Ch. J., and CHRISTIANSON, BURR, and BURKE, JJ., concur.