Argued April 6, reversed with instructions June 30, 1965

# LINNTON PLYWOOD ASSOCIATION *v.* STATE TAX COMMISSION

403 P. 2d 708

*Robert M. Kerr,* Portland, argued the cause for appellant. On the briefs were Tooze, Powers, Kerr, Tooze & Morrell, Portland.

*Gerald F. Bartz,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, and Theodore W. De Looze, Assistant Attorney General, Salem.

Goldsmith, Siegel & Goldsmith, Portland, filed a brief for the Agricultural Cooperative Council of Oregon, an Oregon corporation, as amicus curiae.

Before MCALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

PERRY, J.

This is an appeal from the decree of the Oregon Tax Court denying plaintiff's claim for tax refunds

of corporate excise taxes paid by the plaintiff for the tax years 1958 and 1959. 2 OTC Adv Sh 1 (1964).

The plaintiff contends that it erroneously included as income in each of the taxable years the year-end net proceeds of the plaintiff's business operation which it retained, but which were, by reason of its prior agreement with its members, moneys belonging to the members and not the income of the corporation.

Plaintiff is organized and incorporated under the Oregon Cooperative Corporation Act (ORS ch 62). The plaintiff cooperative is authorized to issue 400 shares of common stock at a par value of $5,000 per share. Each individual may own but one share of stock and his right of stock ownership is conditioned upon his working for the corporation.

It is agreed between the parties that plaintiff, as a cooperative, was, during the years in question, legally obligated to allocate among its members all the net proceeds of its business operations as provided in its bylaws. The major portion of the net proceeds during this period were paid in cash, biweekly, as advances to the members, and the balance not so paid was credited to the members' accounts at the end of the fiscal year as "retained patronage credits."

The plaintiff is not exempt from the payment of the corporation excise tax, but contends that these "retained patronage credits" are not income taxable to the corporation.

The question then presented is whether or not the moneys retained by the corporation, upon which patronage credits were issued to the member-workers, are a part of the income of the corporation or are the property of the member-workers.

The commission argues that the agreement of the

cooperative to assign its earnings to its members is of no effect whatsoever. It relies for this position upon such cases as *Lucas v. Earl,* 281 US 111, 50 S Ct 241, 74 L ed 731, *Moline Properties v. Comm'r,* 319 US 436, 63 S Ct 1132, 87 L ed 1499, and *National Carbide Corp. v. Comm'r,* 336 US 422, 69 S Ct 726, 93 L ed 779, wherein statements are made to the effect that an assignment made by a corporation or person that earns the profit may not avoid the tax by assigning the profit to another.

■ These cases are not in point. In each of the above cases, and others similarly decided, none of the assignors were cooperative corporations. The corporations there discussed were organized for the purpose of corporate profit. A cooperative corporation, while having a corporate existence, is primarily an organization for the purpose of providing services and profits to its members and not for corporate profit.

One of the features which distinguish a cooperative from other forms of biparty organizations is the absence of capital profit. Packel, Law of Cooperatives, 3rd ed, § 1, p 1.

Encyclopedia Americana (1957 ed) Vol 7, at page 639, defines cooperatives as follows:

> "A cooperative is an organization established by individuals to provide themselves with goods and services, or to produce and dispose of the products of their labor. The means of production and distribution are thus owned in common and the earnings revert to the members, not on the basis of their investment in the enterprise but in proportion to their patronage or personal participation in it. Cooperatives may be divided roughly into consumer cooperatives and producer cooperatives.
>
> "Consumer organizations operate for the bene-

fit of the members in their capacity as individual consumers. * * *

"Producer organizations operate for the benefit of the members in their capacity as producers. Their function may be either the marketing or processing of goods produced individually (as in fishermen's or farmers' marketing associations, or associations which make butter or cheese from farm products received from farmer members), or the marketing of goods processed or produced collectively (as in the so-called workers' productive associations operating factories or mills)."

This purpose of organization is well recognized by the legislature of this state in noting in ORS 62.310, in effect prior to January 1, 1958,

"* * * The sums remaining for distribution to the members after paying operating expenses and deducting sums for reserves, in either stock or nonstock associations, shall be apportioned as dividends in accordance with the amounts of business transacted by each member through the association. * * *"

and the subsequent enactment of ORS 62.415 which states:

"* * * net proceeds or savings on patronage * * * by its members shall be apportioned and distributed among those members in accordance with the ratio which each member's patronage during the period involved bears to total patronage by all members during that period * * *. For the purposes of this section work performed as a member of a workers' cooperative shall be deemed to be patronage of that cooperative."

The commission also contends, even if plaintiff is a cooperative and the earnings in fact belong to its member-workers, that, nevertheless, this cooperative corporation does not meet the generally accepted re-

quirements of law to exempt the "retained earnings" from the excise tax. The commission relies upon *Pomeroy Cooperative Grain Co. v. Commissioner of Internal Revenue,* 31 Tax Court of United States 674.

The commission fails to note that in *Pomeroy Cooperative Grain Co. v. Commissioner of Internal Revenue,* supra, the court was there dealing with a cooperative which was engaged in the purchase, storage and sale of grain from and for members and nonmembers alike. That as to income subject to be treated as a patronage credit or income of the patron a distinction was to be made between income derived through business transactions with its members and income derived from business transactions with nonmembers. The income derived from direct transactions with the members of the corporation being treated as patronage credits and not income of the cooperative, while the income derived from transactions with nonmembers was to be treated as the income of the cooperative.

No such issue of fact is here presented, for from the pleadings and stipulation of the parties it is clear that in the trial court neither plaintiff nor defendant was concerned with the source of the retained credits.

■ We will not concern ourselves with issues not raised in the trial court.

The commission also relies upon the proposition that nowhere does the statute exempt the retained moneys which are credited to the worker-member from the payment of the excise tax.

It should also be noted that nowhere do the statutes tax the moneys retained in the hands of the cooperative.

The general statutes on excise taxes provide that

the income is taxed to the one who produces the income.

■ As pointed out, in the absence of legislation to the contrary, the worker-members of a cooperative are considered the producers of the income. This is particularly true of the plaintiff corporation which was organized for the specific purpose of providing the highest income possible to its worker-members for work and labor done in producing manufactured goods for sale. Under such an arrangement all of the income produced through the labors of its members should be treated as the property of its member-workers. *San Joaquin V. P. Producers' Ass'n v. Comm'r of Int. Rev.*, 136 F2d 382, 31 AFT 161; *Harbor Plywood Corporation*, 14 TC 158, aff'd 187 F2d 734, 40 AFTR 330; *Farmers Cooperative Company v. C. I. R.*, 288 F2d 315; *Uniform Printing & S. Co. v. Commissioner of Int. Rev.*, 88 F2d 75.

The Oregon Tax Court, in holding the corporation liable for the tax upon that portion of the income retained, did not reject the view that the income was produced by and belonged to the worker-members, but stated (2 OTC Adv Sh 1, 3):

"* * * for their part, cooperative members have not reported retained patronage credits as income when their cooperative was not required to pay its members anything at any time. The members' position was sustained in other federal cases in which the court looked at patronage credits from the members' viewpoint. Long Poultry Farms v. Commissioner, 249 F2d 726, 52 AFTR 912 (4th Cir 1957).

"These two tax treatments are contradictory. If a member receives his patronage credit income and reinvests it, then he should be taxed on that income. If a cooperative pays its members nothing

of value upon which he can be taxed, then nothing should be excluded from the cooperative's income. Both the cooperative and its member should not be able to exclude this income from tax on two conflicting theories.

"In 1962, Congress harmonized this dichotomy of theories when it enacted Subchapter T of Chapter 1 of the Internal Revenue Code of 1954, §§ 1381-1388. This subchapter taxes most retained patronage credits to the cooperative and the balance to its members in the year the cooperative receives that income which the retained credits represent. Essentially, the scheme of present federal law is to tax all income retained by a cooperative to either the cooperative or its member in the year that the cooperative receives the income.

"Oregon has no statute comparable to the 1962 federal act. In this state, the Supreme Court has held that a member-patron of an agricultural cooperative realizes no income when he receives a nonassignable patronage dividend which bears no interest and is retired, if at all, only at the cooperative's discretion. Kuhns v. State Tax Com., 223 Or 547, 355 P2d 249 (1960). * * *."

From the tax court's opinion, it is clear that the basis of its opinion denying the plaintiff cooperative relief is based upon the fact that, if the retained moneys are the property of the members and are not taxable in the year earned to the taxpayer, then the cooperative should be liable for the tax earned. This view would, of course, eliminate the possibility of earned income of a patron escaping taxation as is now possible under the present status of the law.

In reaching its decision the tax court relied upon our holding in *Kuhns et ux v. State Tax Com.*, 223 Or 547, 355 P2d 249, cited in its opinion. In that case, we were determining, as to the amounts reserved, only

the question of whether a patron's portion could be considered as taxable income of the patron in the year in which credits were issued but not paid.

We made it clear in that opinion that the reserves were the property of the patron, but, by reason of the agreement between the cooperative and the patron, the cooperative had sole control of the use of these moneys until such time as it might deliver them to the patron; that under these circumstances the earnings of the patron were so contingent they could not be considered as income until an actual spendable distribution of the asset had been made.

It is true, as stated by the tax court, unless the retained earnings of the patron are taxed to the cooperative, that income may entirely escape taxation.

█ To meet this contingency or hiatus in the federal law of taxation, Congress enacted Subchapter T of Chapter 1 of the Internal Revenue Code of 1954, §§ 1381-1388. We have no such provision in the tax laws of this state and, regardless of how desirable the result might be to have such a law, we cannot by judicial fiat usurp the powers of the legislative branch.

█ In our opinion, the earnings of this plaintiff created by its workers are the earnings of its worker-members and cannot be considered as a part of the income of the corporation.

The judgment of the tax court is reversed with instructions to grant the relief prayed for by the plaintiff.

DENECKE, J., dissenting.

Plaintiff cooperative received more money from the sale of plywood than it expended in producing this plywood. The cooperative paid a portion of this sur-

plus to its members. The remainder it retained for its own use. The issue is whether the cooperative must pay the corporate excise tax on this retained remainder.

Plaintiff's bylaws refer to this surplus as "net proceeds." The bylaws require that all net proceeds be allocated to the members on the basis of time worked. The allocation is in the form of a credit upon the cooperative's books and payment thereof is made to workers in cash, "except as to any sums which may be retained by the Association as hereinafter provided for the Association's contingent reserves, or capital reserves." (Section 4(b), Bylaws) Section 4(c) further provides for a payment of the net proceeds to the members of amounts "not required by the Association for capital or reserve purposes."

Section 5(c) provides:

"In order that the active working members of the Association will currently furnish money through their work for further capitalizing the Association and for revolving the patronage capital furnished by working members in earlier years, the Board of Directors as of the close of each fiscal year shall determine what sum reasonably should be added to the patronage capital of the Association * * *. Such capital contributions shall not bear interest and shall not constitute any debt by the Association, and the credits representing such patronage capital contributions shall be subordinate to all debts and liabilities of the Association."

Cooperatives are an unusual type of business organization and have been treated as such by courts and legislatures. They have been considered as mere conduits for the passage of income through to their members, or merely as agents for their members, their

principals. For some purposes they have not been considered as a separate entity, such as a corporation. The Oregon Legislature has accorded certain cooperatives special tax treatment by exempting farmer and fruit grower cooperatives from the payment of the corporate excise tax. That, however, is the only special treatment contained in the taxing laws. ORS 317.080(9).

The courts, particularly the federal courts, have gone further in giving cooperatives income and excise tax advantages. Using the theory that the cooperative is only a conduit or agent for its members, the courts have quite uniformly held that the net profit made by a cooperative, and then paid to its members, was not a profit of the cooperative; the cooperative was merely a mechanism to funnel the money from the buyer to the members. This has been criticized: Magill and Merrill, *The Taxable Income of Cooperatives,* 49 Mich L Rev 167, 182 (1950). This, of course, is completely different than the tax treatment of the usual corporation. The usual corporation pays a tax on net profit and from the remainder, after taxes, pays dividends to stockholders and the stockholders pay personal income taxes on the dividends. However, in the present case, the Commission is not attempting to tax cooperative income paid to members; it is the income not paid to members but retained for reserves and capital which is sought to be taxed.

ORS 317.105 provides: " 'Gross income' as used in this chapter [Corporation Excise Tax] includes: (1) Gains, profits and income derived from the business, of whatever kind and in whatever form received." ORS 317.155 provides: " 'Net income' as used in this chapter means the gross income less the deductions allowed."

The excess of income received by the cooperative over expense is net income as that is defined in the above statute. The Commission, however, is not claiming that the excess paid in cash to the members of plaintiff cooperative is taxable. We are only concerned with the excess not paid but used by the cooperative in conducting its business.

This excess retained by the cooperative may never be paid to the members. The bylaws recite that it is not a debt of the cooperative. The bylaws subordinate the members' claims to this excess to all debts and liabilities of the cooperative. The bylaws state the purpose of retaining the excess is to provide working capital. The bylaws also state that when (and if) sufficient working capital is on hand, then the moneys retained from members in earlier years will be paid out.

The purpose of the retained amounts is well stated in the amicus curiae brief filed by the attorneys for the Agricultural Cooperative Council of Oregon which states: "It is believed that most Oregon agricultural cooperatives obtain a substantial part of their financing by reinvestment by their patrons of sums due such patrons in revolving funds of the cooperative in a manner somewhat similar to the allocations made by the plaintiff in the case before this Court."

If the members were actually paid the moneys and then loaned them back to the cooperative, the Commission apparently would not contend the cooperative was taxable; the members, however, would be taxed. Under the plan followed by the cooperative, it has all the advantages of retaining earnings for working capital without the tax disadvantage. It makes a book entry allocating moneys to individual members; how-

ever, it retains these amounts, has complete control over such moneys, is not obligated to ever pay it, may never pay it; however, it contends it is really the property of the members because of the book entries of allocation. It has all of the attributes of ownership of money but it claims it is not its money.

There is nothing in the Oregon tax statutes expressly exempting these retained funds from taxation. Can this court reasonably imply such an exemption? To do so would run contrary to a long line of decisions of this court.

In *Ore. Physicians' Serv. v. State Tax Com.,* 220 Or 487, 349 P2d 831 (1960), the taxpayer also sought exemption from payment of the Oregon Corporate Excise Tax. The taxpayer was a nonprofit corporation providing medical services. In denying the exemption, the court stated:

> "In determining whether or not the circuit court was correct in dismissing the complaint we start with the well settled rule that tax exemption statutes are strictly construed against the individual who claims their benefit. [Citing cases.] The reason underlying this rule of construction goes deeper than mere protection of the public fisc. Not uncommonly, charitable and other nonprofit associations compete actively with private business. To the extent that a charitable corporation is relieved of the tax burden it gains a competitive advantage. To the extent that such tax relief is not based on reasonable classification for sound public ends it is a denial of equal protection of the laws. Strict construction of exemption statutes thus with us has constitutional overtones. * * *" (220 Or at 493)[1]

---

[1] A corporation engaged in the plywood business can only generate working capital out of what income remains after income and excise taxes have been paid.

This principle was recently reiterated in *Bd. of Pub., Meth. Church v. Tax Com.,* 239 Or 65, 396 P2d 212 (1964).

No reason appears to accord judicial favor to worker cooperatives but not to churches, colleges, etc.

The issue here may not be one of "exemption" but the principle applies to all instances in which the claim is that income is not subject to tax.

In my opinion the retained earnings are subject to the excise tax.

SLOAN and O'CONNELL, JJ., join in this dissent.