Argued and submitted March 11, reversed and remanded May 11, 1983

EMPLOYMENT DIVISION,
*Petitioner,*

*v.*

SURATA SOY FOODS, INC.,
*Respondent.*

(81-T-118; CA A25665)

662 P2d 810

Kay Kiner James, Assistant Attorney General, Salem, argued the cause for petitioner. With her on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Lise Rein, Eugene, waived appearance for respondent.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Petitioner appeals from a decision of the referee setting aside a notice of tax assessment and deficiency assessment for unemployment insurance contributions that petitioner filed against respondent Surata Soy Foods, Inc. (Surata) pursuant to ORS 657.681. We reverse.

Surata is a cooperative corporation organized under ORS ch 62. Although it is an "employer" under ORS 657.025 and pays unemployment contributions for its employes who are not members of the cooperative, Surata did not pay unemployment insurance contributions during the employment year 1979 for six individuals who performed services in 1979 and were members of the cooperative.

The referee made the following findings of fact:

" * * * (1) During the latter part of 1978, five individuals filed the appropriate documents and were recognized by the State of Oregon through a Certificate of Incorporation issued January 11, 1979, as a duly incorporated Cooperative Corporation under Chapter 62, ORS (Exhibit No. 7). (2) The Oregon Employment Division subsequently determined applicant (Surata Soy Foods, Inc.) to be an employer subject to the Employment Division Law, Chapter 657, ORS as of January 2, 1979, by notice served September 12, 1979 (Exhibit No. 1). (3) Applicant did not have any corporate stock; however, it did require payment of a $300 membership fee which was not transferrable, but upon withdrawal from membership status, was fully refundable. * * * (5) These initial five individuals and others who subsequently qualified as 'members' of the cooperative, collectively operated as the Board of Directors, and in this capacity elected the corporate officers, designated the distribution of 'patronage fees' to members and wage scale for nonmembers, the products and amount to be produced, shift assignments and other business matters, as provided for in their by-laws. (6) An individual wishing to become a member would file a written application with the board of directors who would then review it at their monthly meeting. (7) The individual, if found to be potentially a desirable member, would then enter a probationary work period * * * (10) The board of directors would estimate the annual net income and then distribute that to the 'members' at an hourly rate based on hours of service the member reported to the corporate secretary-treasurer. (11) This hourly rate was generally in excess of what was received by the non-members, but could be less

had net income so required. (12) The payments to members during the 1979 calendar year were not reported to the Employment Division and no tax paid by applicant or withheld by reason of federal or state law related to these payments. (13) Individuals accepted as members paid the $300 membership fee * * * (15) The members while acting as the board of directors determined by mutual consent their work assignments, both as duties and amount of hours to be worked. (16) Each member performed his/her agreed upon tasks in the production of applicant's products without direction or supervision. (17) Each member received the same rate of compensation regardless of position within applicant's organization and actual duties performed. (18) During the period in question, the four calendar quarters of 1979, the six individuals, including Benjamin Hills, identified in the Notice of Tax Assessment served September 23, 1981 (Exhibit No. 2) were fully participating and paid up members of applicant or in the process of acquiring that status. * * * (20) Benjamin Hills elected to withdraw from membership status in early 1980, but continued to work for approximately two months after ending his membership status. (21) Mr. Hills subsequently filed on October 7, 1980, a claim for unemployment benefits which indiciated applicant was his last employer and the period worked as January 5, 1977 through June 12, 1980."[1]

The referee held that Surata was not liable to pay unemployment insurance contributions for the members who performed services for the corporation, finding that the relationship of the member workers with Surata in 1979 "did not include the requisite characteristics of an employee-employer status." The referee stated:

"During the tenure of their status as a 'member' [sic] any compensation or return for their services was entirely dependent upon there being a savings [profit] from their efforts which could be shared by established rates and in proportion to efforts provided to produce the profit. While no member was never [sic] compensated for their services this was a distinct possibility and a probability had adverse conditions thwarted the planned results of their cooperative efforts."

---

[1] With respect to finding 16, the evidence clearly showed that members worked under the direction of the board of directors as to what shift they would work and what product they would produce. As to finding 17, the evidence showed, and we take the finding to mean, that each member received the same rate of compensation per hour worked regardless of position within the organization and the actual duties performed.

The issue is whether the referee made an erroneous interpretation of law. ORS 183.842(a); ORS 657.884. The referee's decision was made prior to this court's decision in *Assoc. Reforestation v. State Workers' Comp. Bd,* 59 Or App 348, 650 P2d 1068, *rev den* 294 Or 295 (1982). In that case, members of Hoedads, Inc., a cooperative corporation engaged in reforestation, argued that the "patronage dividends" which each received should be treated, for purposes of the Workers' Compensation Law, not as "remuneration" but as incident to an ownership interest in the cooperative. Hoedads argued that, in the absence of profits, members might not receive any compensation for their services. We held that Hoedads was subject to the Workers' Compensation Law:

> "* * * The legislature chose the broad word 'remuneration' to define a subject employer; we see no reason that the recompense that a worker receives for his labor should not be considered remuneration just because the amount varies with the profits of the organization.
>
> "* * * * *
>
> "* * * [Members] may be thought of as having a proprietary interest in the cooperative, for the period in which they are members, but this is not inconsistent with what remains in essence an employer-employe relationship." 59 Or App at 354.

Under the Workers' Compensation Law, ORS 656.005(28), "worker" means any person who furnishes services for a "remuneration," subject to the direction and control of an employer. "Employe," under the Unemployment Insurance Law, ORS 657.015, means any person employed for "remuneration" under a contract of hire by an employer. Services performed by an individual for "remuneration" are deemed to be employment. ORS 657.040. Although the members of Surata performed services in return for patronage dividends,[2] which are a share of profits in proportion to the amount of work performed, and in the absence of profits might

---

[2] ORS 62.415(1) provides in part:

"* * * net proceeds or savings of a cooperative shall be apportioned, distributed and paid periodically to those persons entitled to receive them, at such times and in such reasonable manner as the bylaws shall provide * * * net proceeds or savings on *patronage* of the cooperative by its members shall be apportioned and distributed among those members * * *. For the purposes of this section *work performed as a member* of a workers' cooperative *shall be deemed to be patronage of that cooperative.*" (Emphasis supplied.)

not receive any compensation, we hold they were receiving "remuneration" within the meaning of ORS 657.015. *Assoc. Reforestation v. State Workers' Comp. Bd, supra.* The required employer-employe relationship existed in 1979 between Surata and its members.

Reversed and remanded for further proceedings.