463
Argued and submitted June 4, 1986, affirmed January 6, 1987

In the Matter of the Compensation of
Lynn O. Nelson, Claimant.

NELSON,
*Petitioner on Review,*

*v.*

SAIF CORPORATION,
*Respondent on Review.*

(WCB 84-02707; CA A34757; SC S32745)

731 P2d 429

Michael M. Bruce, Eugene, argued the cause and filed a brief for petitioner on review.

Margaret E. Rabin, Assistant Attorney General, Salem, argued the cause for respondent on review.

Samuel J. Imperati, Portland, filed a brief *amicus curiae* for Oregon Public Employes Union Local 503, SEIU, AFL-CIO, CLC. With him on the brief were James S. Coon and Aitchison, Imperati, Barnett & Sherwood, P.C., Portland.

Allan M. Muir, Portland, filed a brief *amicus curiae* for Association of Workers' Compensation Defense Attorneys. With him on the brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

LENT, J.

**LENT, J.**

The issue is whether money paid by the employer, pursuant to a collective bargaining agreement, into the employees' pension fund and for medical and dental insurance for the employees is a part of "the daily wage the worker was receiving" for the purpose of calculating the amount of compensation for temporary total disability to which the worker was entitled under ORS 656.210. We hold that it is not.

Under *Sahnow v. Fireman's Fund Ins. Co.*, 260 Or 564, 568-69, 491 P2d 997 (1971), we take the facts as found by the Court of Appeals:

> "Claimant suffered a compensable injury on October 11, 1983. At the time of the injury, he was a member of the Oregon Public Employees Union. Under the union's negotiated labor contract with the state, he was entitled to employer-paid fringe benefits, including pension benefits and medical and dental insurance. The benefits were provided in lieu of a salary increase."

*Nelson v. SAIF,* 78 Or App 75, 77, 714 P2d 631 (1986).

The controversy between these parties arises from the fact that claimant, by reason of an injury on the job, became entitled to workers' compensation for temporary total disability to be paid by the State Accident Insurance Fund Corporation (SAIF). The amount of compensation payable for temporary total disability under ORS 656.210 is tied to a percentage of wages claimant was receiving at the time of his injury. In determining what were those wages, SAIF did not include the amounts paid by claimant's employer into the pension fund established under the Public Employes' Retirement System and did not include the amounts paid by the employer as premiums for medical and dental insurance for claimant and his fellow employees.[1]

Claimant requested a hearing, contending that these fringe benefits paid by his employer fell within the words "or

---

[1] We shall refer to the amount paid into the pension fund and for medical and dental insurance as "fringe benefits."

similar advantage" contained in *former* ORS 656.005(27).[2] This statute provided:

> " 'Wages' means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident, including reasonable value of board, rent, housing, lodging or similar advantage received from the employer. * * *"

The referee agreed with claimant and issued an appropriate order.

On review sought by SAIF, the Workers' Compensation Board (Board) reversed the referee. The Board utilized what it termed a principle of statutory construction that "where general words follow an enumeration of specific items or classes, the general words will be construed as restricted by the specific designation so that they include only items of the same kind or class as those specifically enumerated." The Board concluded that these fringe benefits could not readily be converted into a cash equivalent as could board, rent, housing and lodging and, therefore, were not of "similar advantage." For this line of reasoning, the Board relied on the decision in *Morrison-Knudsen Constr. Co. v. Director, OWCP,* 461 US 624, 103 S Ct 2045, 76 L Ed 2d 194 (1983), construing similar language in the Longshoremen's and Harbor Workers' Compensation Act. A second basis for the Board's decision was that *former* ORS 656.005(27) provided that the enumerated items and those of similar advantage had to be received from the employer. The Board reasoned that board, rent, housing and lodging are "received from the employer" because the employee has the immediate right to use and control them, but that the fringe benefits are not received from the employer because the employee has not that immediate right. The Board concluded that this difference took the fringe benefits out of the statutory definition of wages.

---

[2] At the time of this worker's accidental injury, the definition of "wages" was found in ORS 656.005(27). The definition is now found at ORS 656.005(26), which provides:

> " 'Wages' means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident, including reasonable value of board, rent, housing, lodging or similar advantage received from the employer, and includes the amount of tips required to be reported by the employer pursuant to section 6053 of the Internal Revenue Code of 1954, as amended, and the regulations promulgated pursuant thereto, or the amount of actual tips reported, whichever amount is greater. * * *"

On judicial review, the Court of Appeals adopted the Board's reasoning and affirmed the Board.

We allowed claimant's petition for review to consider his contentions, which have never been made in, or addressed by, this court in the years since 1917 when the amount of compensation for temporary total disability was first tied to the worker's wages. Or Laws 1917, ch 288, § 10. In his petition for review, he has continued to focus on whether the money paid by his employer to others is of "similar advantage" to the items enumerated in the statute.

Amicus union urges that claimant's argument that the fringe benefits are of similar advantage is well taken but advances the further proposition that the fringe benefits are wages as defined in *former* ORS 656.005(27) for an additional reason.

Amicus union argues that employer-paid benefits of this kind are a mandatory subject of collective bargaining under ORS 243.650 to 243.782, which require both a public employer and its employees' representatives to bargain in good faith with respect to employment relations, which is defined in ORS 243.650(7) as follows:

" 'Employment relations' includes, but is not limited to, matters concerning direct or indirect monetary benefits, hours, vacations, sick leave, grievance procedures and other conditions of employment."

The union argues that it agreed to trade higher salaries for these employer-paid fringe benefits, and had it not done so, the employee "could well have afforded to buy" the benefits on his own. We shall assume, arguendo, this is true. That being so, argues the union, the employer's payments are a part of the "money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident," the very words of the definition of "wages." Because these benefits are within that definition of wages, it is not necessary, says the union, to address at all the language following the word "accident" in the definition.

SAIF, the Board, the Court of Appeals and amicus Association of Workers' Compensation Defense Attorneys focus on the words following the word "accident" in the statute. They contend that there is no similarity between board,

rent, housing and lodging on the one hand and these fringe benefits on the other. That being so, they say, the fringe benefits are not of similar advantage.

We believe that the analyses of all concerned has mistaken the true point of departure for determining the amount of compensation for temporary total disability to which this claimant is entitled. It is ORS 656.210 that creates the duty to pay compensation for temporary total disability and prescribes the formula for calculation of the amount to be paid. ORS 656.210(1) provides:

> "When the total disability is only temporary, the worker shall receive during the period of that total disability compensation equal to 66-2/3 percent of wages, but not more than 100 percent of the average weekly wage nor less than the amount of 90 percent of wages a week or the amount of $50 a week, whichever amount is lesser. * * *"[3]

Calculation of the amount of compensation payable for temporary total disability requires ascertainment of the weekly wage of the injured worker. ORS 656.210(2) mandates that this be done by multiplying "the daily wage the worker was *receiving*" (emphasis added) at the time of his injury by a figure that depends on how many days per week the worker was regularly employed.[4]

Neither the Board nor the Court of Appeals

---

[3] ORS 656.211 provides:

"As used in ORS 656.210(1), 'average weekly wage' means the average weekly wage of workers in covered employment in Oregon, as determined by the Employment Division of the Department of Human Resources, for the last quarter of the calendar year preceding the fiscal year in which compensation is paid."

[4] ORS 656.210(2) provides:

"For the purpose of this section, the weekly wage of workers shall be ascertained by multiplying the daily wage the worker was receiving at the time of his injury:

"(a) By 3, if the worker was regularly employed not more than three days a week.

"(b) By 4, if the worker was regularly employed four days a week.

"(c) By 5, if the worker was regularly employed five days a week.

"(d) By 6, if the worker was regularly employed six days a week.

"(e) By 7, if the worker was regularly employed seven days a week.

"As used in this subsection, 'regularly employed' means actual employment or availability for such employment."

addressed the text of ORS 656.210, which is the statute that fixes the amount of compensation. That amount derives from the daily wage the worker was "receiving." Both the Board and the Court of Appeals addressed the concept of the receiving of wages only in the context of *former* ORS 656.005(27). Implicit in the decision of each is the idea that the item of similar advantage must be "received." We believe that that is so, but we believe that it is ORS 656.210 that primarily makes it so. *Former* ORS 656.005(27) identified the source of what is received. The source must have been the employer under the former statute. Our conclusion that this was the function of the words "received from the employer" in *former* ORS 656.005(27) is borne out by the subsequent amendment, which now includes in "wages" the amount of "tips" an employee receives in addition to the amounts received from the employer. See the amended statute, ORS 656.005(26), in footnote 2, *supra*.

The key question becomes whether claimant was "receiving" the fringe benefits as a part of his daily wage. Certainly, claimant was not receiving the funds in a literal sense. They never came into his physical possession. The money paid for medical and dental insurance was nothing more or less than premiums. The individual members of the class insured, *i.e.*, the employees, had no right *ever to receive* any part of the funds created by payment of those premiums. Until an employee might need medical or dental care, he would not even be entitled to any benefit of the insurance created by payment of the premiums, let alone any part of the money. Until an employee became eligible, through retirement or termination, he would have no right to receive any money in the pension fund.

We conclude that, within the meaning of ORS 656.210, claimant was not "receiving" the money paid by his employer into the pension fund and into premiums for medical and dental insurance.

This conclusion makes it unnecessary to decide whether these fringe benefits are "wages" for the purpose of *former* ORS 656.005(27) and present ORS 656.005(26).[5]

---

[5] We cannot help being aware that the relationship between rates of workers' compensation and the premiums paid by employers for workers' compensation insur-

The decisions of the Court of Appeals and the Board are affirmed.

---

ance is a subject of controversy between organized labor and organized management at each session of the legislature. If fringe benefits of this kind are to become a part of the base for calculating payment of compensation, the legislature can easily so provide by amending the present statutes.