**SPEEDWAY, INC., Petitioner and Appellant,**

v.

**JOB SERVICE NORTH DAKOTA, Respondent and Appellee.**

Civ. No. 890325.

Supreme Court of North Dakota.

April 25, 1990.

Pringle & Herigstad, P.C., Minot, for petitioner and appellant; argued by James E. Nostdahl.

David Ernest Clinton (argued), Asst. Atty. Gen., Bismarck, for respondent and appellee.

LEVINE, Justice.

Speedway, Inc. appeals from a district court judgment upholding the decision of Job Service North Dakota requiring Speedway, Inc. to pay job insurance taxes on income received by Shirley Struckness. We affirm.

Speedway, Inc. constructed a new building located near Minot for purposes of operating a supper club and lounge. Speedway, Inc. owns the building and all equipment. From its inception, the cafe and lounge has been run by Struckness. Speedway, Inc. has an oral "lease" agreement with Struckness under which she pays rent of $3,200 a month plus 75 percent of the monthly net profit over $800 realized by the supper club and lounge. Struckness receives the first $800 of monthly net profit from the business and 25 percent of all additional profit. In a Job Service questionnaire, Struckness responded that her work is to "manage" the operation and that she does "whatever needs to be done to run the business," for which she receives a "paid percentage." Struckness' duties include hiring and firing of personnel, ordering supplies and paying the bills from the business checking account.

In 1987, Job Service issued a determination requiring Speedway, Inc. to pay job insurance taxes on income received by Struckness. The determination was appealed by Speedway, Inc., and, following a hearing, an appeals referee reversed the initial decision, concluding that Struckness was merely leasing the business from Speedway, Inc., and that her income was not subject to job insurance taxation. That decision was then reviewed by the Executive Director of Job Service who concurred with the initial determination that Struckness' income should be taxed. Speedway, Inc. appealed to the district court which upheld the decision of Job Service's Executive Director. Speedway, Inc. then appealed from the district court's judgment.

■ When an administrative agency decision is appealed to the district court and then to this court, we review the decision of the agency. *Schultz v. North Dakota Department of Human Services,* 372 N.W.2d 888 (N.D.1985). Our review of administrative decisions is governed by Section 28-32-19, N.D.C.C. One of the requirements under that provision is for us to determine whether the agency decision is in accordance with the law, and in making that determination we look to the law and its application to the facts. *Bickler v. North Dakota State Highway Commissioner,* 423 N.W.2d 146 (N.D.1988).

■ On appeal, Speedway, Inc. asserts that because the Job Service referee was the only party that "saw and heard the evidence and witnesses first hand" this court must review the referee's decision rather than that of the Executive Director. We disagree.

A similar argument was made in *Schultz, supra.* In that case, the agency's Executive Director was not present at the hearing and allegedly could not have examined the testimony given at the hearing because the transcript of the hearing had not been prepared when the director made his decision. We explained our review of the agency's decision:

"The administrative officer deciding a case need not actually hear the witnesses testify or hear oral argument, but the officer deciding the case must consider and appraise the evidence before reaching a decision.... Although a hearing examiner has the advantage of hearing

and seeing witnesses testify, an agency may reject the examiner's decision even on a question involving the credibility of contradictory witnesses.... A court's review of an agency decision does not include probing an agency decisionmaker's mental process if a hearing was given as required by law....

\* \* \* \* \* \*

"Our inquiry is limited to a review of the findings, conclusions, and decision of the agency under the appropriate standard of review." *Schultz, supra,* 372 N.W.2d at 892.

The final decision of Job Service was made by its Executive Director and it was from his decision that Speedway, Inc. appealed to the district court. Consequently, we review the decision of the Executive Director to determine whether Speedway, Inc. has raised an appropriate ground for reversal of the agency's determination.

Speedway, Inc. asserts that it should not be required to pay job insurance taxes on Struckness' income and that Job Service's contrary conclusion is based on an erroneous application of Section 52–01–01(17)(e), N.D.C.C., which provides:

"e. *Services performed by an individual for wages or under any contract of hire must be deemed to be employment subject to the North Dakota Unemployment Compensation Law* unless and until it is shown that: (1) such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; (2) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of the enterprise for which such service is performed; and (3) such individual is customarily engaged in an independently established trade, occupation, profession, or business." [Emphasis added.]

Under the foregoing provision, an individual who meets the criteria under subparts (1), (2), and (3), is deemed to have independent contractor status for purposes of exempting her income from job insurance taxation. This is commonly referred to as the "ABC Test." Speedway, Inc. concedes that Struckness cannot meet the requirements of the ABC test, but asserts that her income is not subject to job insurance taxation because Struckness does not fall within the definition of a person who performs services "for wages or under any contract of hire."

The term "wages" is defined under Subsection 52–01–01(31), N.D.C.C., which provides in relevant part:

"31. 'Wages' means all remuneration for service from whatever source, including commissions and bonuses and the cash value of all remuneration in any medium other than cash...."

The term "contract of hire" is not defined under the statute.

■ We agree with Speedway, Inc. that Section 52–01–01(17)(e), N.D.C.C., unambiguously requires a person to perform services either for wages or under a contract of hire to be deemed employed for purposes of unemployment compensation taxation. However, we do not agree with Speedway, Inc.'s narrow interpretation of the phrase "contract of hire," which Speedway contends is "substantially the same as the 'services performed by an individual for wages' condition."

■ When interpreting a statute, effect must be given to each provision of the statute, if possible. *County of Stutsman v. State Historical Society,* 371 N.W.2d 321 (N.D.1985). Under Section 52–01–01(17)(e), N.D.C.C., services are subject to the unemployment compensation laws if they are performed for wages *or* under any contract of hire. Since the Legislature has defined wages as meaning "all remuneration for service from whatever source ...", the phrase "contract of hire," to be meaningful under the statute, must encompass services other than or in addition to those performed for wages, as defined by the statute.

In *Unemployment Compensation Division v. People's Opinion Printing Co.,* 70

N.D. 442, 295 N.W. 656 (1941), this court construed the phrase "contract of hire" under a predecessor statute similar to Section 52–01–01(17)(e), N.D.C.C. The Unemployment Compensation Division of the Workers Compensation Bureau contended that the president of a corporation performed services under a contract of hire and was, therefore, an employee subject to job insurance taxation. The president received no compensation of any kind for the work that he did on behalf of the corporation. Although he performed presidential duties such as countersigning checks and certificates of stock, presiding at director and stockholder meetings, and signing various corporate reports, he did not perform any services in connection with the management or conduct of the corporation's business. This court held that the president was not an employee working under a contract of hire, because the acts he performed on the corporation's behalf were gratuitous and were acts necessary for maintaining the defendant as a corporation, rather than acts involving the management or conduct of the corporation's business. Our rationale in *People's, supra,* provides guidance in this case for determining whether Struckness' income is subject to job insurance taxation.

Struckness' services are clearly distinguishable from those performed by the corporate president in *People's, supra.* Struckness manages the corporation's business of operating a restaurant and lounge. Her services are not gratuitous, but rather, she receives a share of the business's profits. Under these circumstances, we conclude that Struckness is an individual who performs services under a contract of hire and that her income is, therefore, taxable under Ch. 52–01, N.D.C.C. We reject Speedway, Inc.'s argument that, because Struckness does not receive a specific salary or other direct payment from Speedway, Inc., but is compensated only with a percent of the business's net profits, she is not performing services under a contract of hire. We are not alone in deciding that the absence of salary or direct payment does not preclude the existence of a contract for hire. *E.g. Employment Division v. Sura-*

*ta Soy Foods, Inc.,* 63 Or.App. 221, 662 P.2d 810 (1983); *Sanders v. Oklahoma Employment Security Commission,* 430 P.2d 789 (Okla.1967); *Department of Employment Security v. Charlie's Barber Shop,* 230 Md. 470, 187 A.2d 695 (1963); *Unemployment Compensation Commission v. Harvey,* 179 Va. 202, 18 S.E.2d 390 (1942).

In *Employment Division v. Surata Soy Foods, Inc.,* 63 Or.App. 221, 662 P.2d 810 (1983), the Oregon Court of Appeals was asked to construe its unemployment insurance law which required taxation of persons employed for remuneration under a "contract of hire." The court determined that member workers of a cooperative corporation were employees under a contract of hire whose income was subject to taxation, even though they only received a share of the organization's profits and, in the absence of profits, did not receive any compensation.

A nearly identical statutory provision to our unemployment insurance law was also construed by the Oklahoma Supreme Court in *Sanders v. Oklahoma Employment Security Commission,* 430 P.2d 789 (Okla. 1967). In that case, there were three barber shops staffed with nine barbers. Each barber had signed a written "lease" agreeing to pay the owner of the shops 30 percent of the barber's net earnings. The owner asserted that each barber was engaged in an independent profession whose income was not, therefore, subject to job insurance taxation. The Oklahoma Supreme Court disagreed, concluding that, in effect, each barber was under a contract of employment performing a part of the business being conducted by the owner of the barber shops. The court refused to construe the lease agreements to negate the employment relationship which the court found existed for purposes of job insurance taxation:

"We are of the opinion that in the present case the lease between the barbers and Sanders is nothing more than a contract of employment. Sanders is the sole proprietor of the three barber shops, and each of the barbers is performing a

part of the regular business being conducted by Sanders. The lease makes no real or substantial change in their relationship. The law considers substance rather than form. The execution of the lease may not serve as a vehicle to circumvent what would otherwise be a statutory obligation.

\* \* \* \* \* \*

"The ultimate purpose of Sanders in establishing these three businesses was for profit. The barbers were employed to carry out that purpose. They were obligated to render such services as were ordinary and incidental to that type of business." *Sanders v. Oklahoma Employment Security Commission, supra,* 430 P.2d at 791–792.

Under factual circumstances substantially identical to those in *Sanders, supra,* the Maryland Court of Appeals, in *Department of Employment Security v. Charlie's Barber Shop,* 230 Md. 470, 187 A.2d 695 (1963), reached the same conclusion as the Oklahoma Supreme Court that the barbers operating under a "lease" agreement were performing services subject to the unemployment compensation laws of that state:

"Here, the three 'lessees' performed personal services for remuneration, even though they were paid by the customer, not by appellee. The amount collected as rent may have been the amount of profit appellee expected to make if he had paid them out of total receipts. Therefore, we find that the barbers here were in covered employment...." *Department of Employment Security v. Charlie's Barber Shop, supra,* 187 A.2d at 698.

The Virginia Supreme Court of Appeals, in *Unemployment Compensation Commission v. Harvey,* 179 Va. 202, 18 S.E.2d 390 (1942), concluded that an employee relationship may exist even though income is based upon a share of the business profits, rather than a wage or salary:

"Even at common law the existence of the relation of master and servant does not depend upon the payment of wages or a salary by a master direct to the servant. The compensation of the employee may consist of commissions or a share of the profits of the employer's business." *Unemployment Compensation Commission v. Harvey, supra,* 18 S.E.2d at 396.

Following the rationale of the foregoing cases, we conclude that the oral lease in this case should not be construed to circumvent imposition of job insurance taxes on Struckness' income. Struckness is performing services under a contract of hire by managing Speedway, Inc.'s restaurant and lounge for which she receives a share of the business's profits.

Having reviewed the record in this case, we conclude that the agency's decision to impose job insurance taxation on Struckness' income is in accordance with the law. The judgment of the district upholding Job Service's decision is affirmed.

ERICKSTAD, C.J., and VANDE WALLE and GIERKE, JJ., concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of MESCHKE, J., disqualified.

VERNON R. PEDERSON, Surrogate Justice, dissenting.

The record in this case supports a conclusion that Struckness' relationship to Speedway, Inc., is an ambiguity. Some of the evidence does corroborate the conclusion that Struckness is an employee, other evidence negates that conclusion—not an uncommon scenario when complex commercial contracts are oral.

Judicial deference toward administrative agency determinations ordinarily warrant affirmance. However, I believe that those cases which tend to allow only a blind, knee-jerk deference ought to be reexamined and redefined to permit courts to reject administrative agency determinations such as those which make a mockery of due process offered by an administrative law hearing proceeding which has been handled by an experienced hearing officer who has made adequate findings and conclusions.

Although it might appear from this court's holding in *Schultz v. North Dakota Department of Human Services,* 372 N.W.2d 888 (N.D.1985), that in this state judicial deference is absolute, we have not always followed that practice. *See, e.g., Allstate Ins. Co. v. Knutson,* 278 N.W.2d 383 (N.D.1979); *Insurance Services Office v. Knutson,* 283 N.W.2d 395 (N.D.1979); and *Blocker Drilling Canada, Ltd. v. Conrad,* 354 N.W.2d 912 (N.D.1984).

Some jurisdictions have specifically held that an agency may not reject its hearing officer's finding unless there is no competent substantial evidence from which the finding could be inferred. *Heifetz v. Department of Business Regulation,* 475 So.2d 1277, 1281 (Fla.Ct.App.1985). *See generally also The Procedural Due Process Approach to Administrative Discretion: The Courts' Inverted Analysis,* 95 Yale L.J. 1017 (1986), and *Keeping 'Em Honest,* 62 Law Inst.J. 836.