Argued and submitted October 27, 1999, affirmed October 4, 2000

In the Matter of the Compensation of
Virgillia K. Ekdahl, Claimant.

SAIF CORPORATION
and Burley Design Cooperative,
*Petitioners,*

*v.*

Virgillia K. EKDAHL,
*Respondent.*

(98-01337; CA A104246)

12 P3d 57

Julene M. Quinn argued the cause and filed the brief for petitioners.

Kenneth B. Elmore argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Employer seeks review of an order of the Workers' Compensation Board that included claimant's patronage dividends in the wages that were used to calculate her temporary disability compensation. We affirm.

Claimant was a member of Burley Design Cooperative (Burley), a manufacturer of bicycles and bicycle accessories. She was injured in a 1996 car accident as she drove home from a work-related seminar. She suffered a cervical and right humerus strain in the accident. Employer accepted her claim and paid her temporary disability benefits. Claimant challenged the rate at which those benefits were paid, arguing that the patronage dividends that she had received during the 52 weeks preceding the accident should be included as part of her wages in the calculation of her time loss benefits.

Burley is a worker-owned cooperative, organized under ORS chapter 62. In addition to its members, who are the owners of the business, Burley also employs a small number of nonmembers. While nonmembers are paid only an hourly wage, members of the cooperative receive both an hourly wage and patronage dividends. Patronage dividends are calculated yearly, based on the number of hours a member works and the portion of the profits that is attributable to the efforts of Burley's members.[1] Patronage dividends are declared at some point in the year following the year in which the profits were actually earned; the declaration is made retroactive to January 1 of the year in which it is made. Each member receives a set portion of the dividend (which can vary between 20 percent and 50 percent) some time in the first eight and a half months of the year in which the dividends are declared.[2] The remainder is put into a capital account in the member's name, where it remains for two years as equity.[3] After the two years, the money becomes a

---

[1] In the years in which the company experiences losses rather than profits, members become liable for a portion of those losses.

[2] In this case, claimant received a lump sum payment for 50 percent of the dividend during the year at issue.

[3] Before April 2, 1996, the portion of dividends held by the cooperative was immediately converted into a loan from the member to the cooperative, on which the cooperative was required to pay interest.

loan to the cooperative upon which the cooperative pays interest to the member. Members are immediately liable for income taxes on the entire amount of the dividend.

The administrative law judge (ALJ) held that the entire patronage dividend was part of claimant's wages and therefore had to be included in the calculation of her time loss benefits. Employer sought review, and the Board affirmed.

ORS 656.210 governs the calculation of temporary total disability benefits. Subsection (2)(b)(A) of that statute provides that "[t]he benefits of a worker who incurs an injury shall be based on the wage of the worker at the time of injury." Under ORS 656.005(29),[4] "wages" is defined as "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident, including reasonable value of board, rent, housing, lodging or similar advantage received from the employer."

▮ The determination of whether claimant's patronage dividends were part of her wages depends on an understanding of the nature of a cooperative. In a case addressing the taxation of cooperatives, the Supreme Court explained that a cooperative is

> "an organization established by individuals to provide themselves with goods and services, or to produce and dispose of the products of their labor. The means of production and distribution are thus owned in common and the earnings revert to the members, not on the basis of their investment in the enterprise but in proportion to their patronage or personal participation in it."

*Linnton Plywood v. Tax Com.,* 241 Or 1, 4, 403 P2d 708 (1965) (citations and internal quotation marks omitted). The *Linnton* court further noted that "income is taxed to the one who produces the income," and that "in the absence of legislation to the contrary, the worker-members of a cooperative are considered [to be] the producers of the income." *Id.* at 7. Finally, it noted that "the earnings of this plaintiff [the cooperative] created by its workers are the earnings of its worker-members and cannot be considered as part of the income of

---

[4] Although ORS 656.005 was amended in 1997, subsection (29) was not affected.

the corporation." *Id.* at 9. Similarly, William Meade Fletcher has explained that "[t]he tax exclusion or deduction of cooperatives' earnings rests on the theory that such earnings are not profits but rather savings produced for a patron through a pooled effort. The policy behind the tax exemption is not to benefit the cooperative as a business organization but to benefit its member-producers." William Meade Fletcher, 14A *Fletcher Cyclopedia of the Law of Private Corporations* § 7026.1, at 679 (rev ed 2000) (citations omitted).

■        Based on the definition of "wages" in ORS 656.005(29) and the nature of the cooperative of which claimant was a member, we are persuaded that the patronage dividends that claimant received were wages. As the Supreme Court explained in *Linnton*, the income produced by a cooperative through the efforts of its members is properly considered the income of the members, rather than the profits of the cooperative. Coupled with the fact that the patronage dividends were based on the hours that claimant worked, that feature of a cooperative disposes of employer's argument that claimant's entitlement to patronage dividends was comparable to a stockholder's right to share in a corporation's profits. Furthermore, the fact that the dividends were monetary and based in part on the number of hours that claimant worked means that the dividends were properly considered a "money rate." It also is significant that claimant was entitled to the patronage dividends under the membership agreement that she signed when she became a member of Burley. Thus, the dividends were part of "the money rate at which the service rendered is recompensed under the contract of hiring." ORS 656.005(29). Because patronage dividends fall under the statute's basic definition of "wages," there is no need to analyze the extent to which they qualify as a "similar advantage" under ORS 656.005(29).[5]

---

[5] We acknowledge that the Board also suggested that the patronage dividends could be considered a bonus that is included in claimant's wages under OAR 436-060-0025(5)(f) (1996), *renumbered* as OAR 436-060-0025(5)(g) (addressing the circumstances in which bonuses can be considered wages). (Although the rule was amended and some of the subsections were renumbered in 1996, the wording of the subsection addressing bonuses did not change.) Under that provision, "[b]onus pay shall be considered only when provided as part of the written or verbal employment contract as a means to increase the worker's wages. End-of-the-year and other one time bonuses paid at the employer's discretion shall not be included in the calculation of compensation." OAR 436-060-0025(5)(g). We agree with the Board that,

Our conclusion that the patronage dividends were wages is buttressed by our decisions in *Emp. Div. v. Surata Soy Foods, Inc.*, 63 Or App 221, 662 P2d 810 (1983), and *Assoc. Reforestation Contractors, Inc. v. State Workers' Comp. Board*, 59 Or App 348, 650 P2d 1068, *rev den* 294 Or 295 (1982). In *Surata Soy Foods*, we held that a cooperative's members were employees and, therefore, that the cooperative was required to pay unemployment insurance premiums for members as well as for nonmember employees. *Surata Soy Foods*, 63 Or App at 225-26. We reached that conclusion in spite of the fact that the members' sole earnings in that case consisted of the patronage dividends that they received. *Id.* at 224. Similarly, in *Assoc. Reforestation Contractors*, we rejected a cooperative's argument that it was not subject to the Workers' Compensation Law because its members received only patronage dividends that were contingent on the corporation earning a profit. We also rejected the cooperative's argument that it functioned as a partnership and therefore should be exempt from the law. *Assoc. Reforestation Contractors*, 59 Or App at 353-54.

We see no reason to deviate from our holdings in *Surata Soy Foods* and *Assoc. Reforestation Contractors* in this case. Although those cases addressed a slightly different issue, namely, whether a cooperative's payment of patronage dividends to its members constituted "remuneration" under ORS 657.015 and ORS 656.005 respectively, we find our reasoning in those cases to be applicable to this case as well.

Moreover, we are not persuaded by employer's argument that the fact that claimant received both an hourly wage and patronage dividends distinguishes this case from *Surata Soy Foods*. Employer argues that we held the patronage dividends to be remuneration in that case because we viewed the employer to be trying to avoid the requirements of the unemployment insurance system by compensating its members solely with patronage dividends. However, nothing in that case indicates that we understood the employer to be

_____

because the patronage dividends are not given at the employer's discretion and necessarily occur annually, OAR 436-060-0025(5) does not preclude us from viewing them as wages. However, in light of our conclusion that the dividends fall within the basic statutory definition of "wages," it is unnecessary for us to consider whether the dividends are, in fact, bonuses.

offering its employee-members dividends instead of wages as a ruse to avoid its legal obligations or that our analysis turned on such an understanding. If the payment of patronage dividends for work performed created an employer-employee relationship in *Surata Soy Foods*, we see no reason that the amount earned from patronage dividends for such work should not also be considered part of the employee's wages.

■       We next address employer's argument that, even if the patronage dividends were wages, the patronage dividends were not wages that the worker was receiving at the time of injury because there was a substantial delay between when the profits were earned and when the member received the dividends. *See* ORS 656.210(2).[6] Because of that delay, employer argues, it was not required to include the dividends in its calculation of claimant's time loss rate under ORS 656.210. We reject that argument as well. Employer bases its theory on the Supreme Court's decision in *Nelson v. SAIF Corp.*, 302 Or 463, 731 P2d 429 (1987). That case addressed whether an employer's payment of medical and dental insurance premiums and its contributions to the claimant's pension were part of the claimant's wages for compensation purposes. The court held that, irrespective of whether those payments could be considered wages, they need not be included in the calculation of the claimant's temporary disability benefits because the worker never *received* the medical and dental premiums at all and would receive the pension payments much later under certain limited conditions. *Id.* at 469.

        *Nelson* is inapposite. Claimant necessarily received her entire portion of the patronage dividends, unlike the premium and pension payments in *Nelson*, and her portion was

---

[6] ORS 656.210(2) provides, in part:

"(a) For the purpose of this section, the weekly wage of workers shall be ascertained by multiplying *the daily wage the worker was receiving* by the number of days per week that the worker was regularly employed.

"(b) For the purpose of this section:

"(A) The benefits of a worker who incurs an injury shall be based on the *wage of the worker at the time of injury*."

(Emphasis added.)

calculated according to the number of hours that she worked and the amount of the cooperative's profits that was attributable to the efforts of its patrons. Within a few months after the declaration of the dividend at issue, she received a lump sum check for 50 percent of her share of the dividends for the previous year. Although the cooperative held the rest, it apparently was held in a capital account in claimant's name for two years and then converted into a loan from the claimant to the cooperative, which loan could run for a period of up to 12 years.[7] Claimant was taxed for the whole amount of her patronage dividends for the year in which they were declared and distributed. That situation is fundamentally different from the one in *Nelson*, in which the employer made premium and pension payments on the claimant's behalf, but the claimant never actually received them. Here claimant initially received 50 percent of the dividends in a lump-sum payment. At the same time, she also received a contractual right to the remainder. Moreover, not only was she immediately taxed on the remainder, it was placed in a capital account in her name and then converted to a loan from her to employer. When the note for the loan matures, she will receive the money regardless of whether she is still employed by the company. Unlike the pension payments in *Nelson*, claimant's receipt of the loan payments in this case is not contingent upon any external circumstances. The money is hers and she is entitled to it, although she may not personally control it until the note becomes due. Accordingly, the Board did not err by including claimant's patronage dividends in the calculation of her average weekly wage for purposes of determining her time loss benefits.

Affirmed.

---

[7] The cooperative instituted the two-year period in which the dividends are held as equity on April 2, 1996; before that, the portion of the dividends held by the cooperative was immediately converted into a loan from the member. It is unclear whether the dividends received during the relevant period in this case were distributed under the old or new system.